THE STATE OF MONTANA, ex rel. ROY C. TUCKER, Relator, v. The DISTRICT COURT of the THIRTEENTH JUDICIAL DISTRICT of the State of Montana, In and For the COUNTY OF STILLWATER, Respondent.

No. 11846.

Submitted April 17, 1970.

Decided April 30, 1970.

468 P.2d 773.

Berger, Anderson & Sinclair, Billings, Richard Anderson, argued, Billings, for relator.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Jack Ramirez, argued, Billings, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding seeking a writ of supervisory control to set aside an order of the district court denying a motion to strike an affirmative defense.

Relator here, plaintiff in the court below, filed suit against the Montana Power Company alleging active negligence by the power company in the operation and maintenance of a private railway and tramway, between its Mystic Lake Dam and the power plant below. The power company's answer asserted certain affirmative defenses, among which are the provisions of sections 67-808 and 67-809, R.C.M.1947, as follows:

"67-808. Restriction on liability to gratuitous licensee for recreation. A landowner or tenant who permits by act or implication, any person to enter upon any property in the possession or under the control of such landowner or tenant for any recreational purpose without accepting a valuable consideration therefor, does not by granting such permission, extend any assurance that such property is safe for any purpose, nor confer upon such a person the status of invitee or licensee to whom any duty of care is owed, and such landowner or tenant, shall not be liable to such person for any injury to person or property resulting from any act or omission of such landowner or tenant, unless such act or omission constitutes willful or wanton misconduct.''

"67-809. Recreational purposes defined. Recreational purposes as used herein shall include hunting, fishing, swimming, boating, water skiing, camping, picnicing, pleasure driving, winter sports, hiking, or other pleasure expeditions."

Plaintiff moved to strike the defenses, which motion was presented on briefs to the district court. Upon consideration, the Hon. C. B. Sande denied the motion to strike by an opinion and order dated Febraury 27, 1970.

This application followed. We accepted jurisdiction, briefs were filed, and argument was had. It is agreed between the parties that if the district court was correct in denying the motion to strike, plaintiff cannot recover under the testimony of plaintiff and other witnesses.

The questions presented are: (1) Are the statutory immunities provided by section 67-808 and 67-809 applicable to the use of personal property or are they restricted to injuries arising out of the use of real estate? (2) Does Montana Power Company qualify as a "landowner or tenant" as those terms are used in section 67-808?

As background, the Montana Power Company, hereinafter called the Company, in the early 1920's, constructed a hydro-electric generating plant and dam at what is called Mystic Lake in Stillwater County. The real estate was and is owned by the United States, the construction was originally undertaken and completed under a special power permit issued by the United States Forest Service for a period of 50 years expiring December 31, 1969. The Company paid to the United States government an annual rental for the real estate occupied and used in that endeavor.

The Company transports water from the dam to its power house through a pipe or flume. The large water pipe or flume extends for 2½ miles from the dam to a point near a hoist house from which it descends 1,024 feet to the power house. A small Model A Ford engine car pushes and pulls two flatcars along

the rail tracks paralleling the flume. It is work train equipment, not passenger.

A cable car track ascends uphill from the power house to the hoist house, 1,024 feet above. All materials used in the maintenance of the water pipe, the railroad tracks, and the dam, are hauled up on this cable car track, and then transported from power house to dam along the railway tracks beside the water pipe to whatever point work is desired.

The locale of the accident is a remote mountain wilderness area, which is snow-bound for eight months of the year.

For more than ten years, from six to ten or more Billings business and professional men, including plaintiff Tucker, had made an annual trip to the area for hiking, fishing and camping. They were permitted by defendant Company to use the cable tram to haul their gear and equipment from the power house up to the hoist house; to load their gear and equipment on the flatcars there maintained by the Company; and their gear and equipment were then hauled from the hoist house along the track to the dam site, where it was all loaded into boats and transported to the recreational camp site. The men themselves could either walk from the hoist house along the tracks to the boats, or they could ride the flatcars to or from the boat landing. Never at any time did the defendant Company charge or receive any consideration for this usage.

On August 6, 1967, plaintiff, as a member of a recreational group traveling free, was riding on a flatcar; and, as the train was going along the track, plaintiff fell and was run over, receiving severe injuries.

The district court in its opinion and order recited:

"A. POSITION OF PLAINTIFF

"Plaintiff first urges the statute is in derogation of common law, and should accordingly be strictly construed; that the statute is included within Chapter 8, Title 67, R.C.M.1947, entitled:

" 'Obligations incidental to the ownership of real property—

monuments and fences';
and that from an over-all consideration of the statute, it contemplates injury from real property, and not personal property such as was involved in this case. Plaintiff also suggests that free transportation of personnel and equipment on the tramway from car to top of dam, and from that point by rail to boat dock for transportation across the lake, was not recreation within the statute.

"The statute applies to entry upon 'any property' 'for any recreational purpose'. It creates a new status distinct from either invitee or licensee. There is relief from liablity from 'any act or omission' which includes active personal conduct. The definition of recreational purposes is all inclusive. Section 19-103, R.C.M.1947 defines 'property', 'real property', and 'personal property'. Plaintiff's first argument is rejected."

Section 19-103, R.C.M.1947 provides:

"19-103. Certain words defined. The following words when used in the Revised Codes of Montana 1947, or in any act amendatory of or supplemental to said codes, shall have the following meanings and interpretations unless otherwise apparent from the context. * * *

"The following words also have the signification attached to them in this section, unless otherwise apparent from the context.

"1. The word 'property' includes property real and personal.

"2. The words 'real property' are co-extensive with lands, tenements, herditaments and possessory title to public lands.

"3. The words 'personal property' include money, goods, chattels, things in action and evidence of debt. * * *"

A brief examination of sections 67-808 and 67-809 clearly supports the conclusions of the district court. The title of section 67-808 reads: "Restriction on liability to gratuitous licensee for recreation." There is no suggestion or inference restricting the liability to acts of omissions in connection with real estate. To so hold this Court would have to add the words "arising out of injuries caused by real estate". The overall intent of the

statute is relief from any and all liability to persons gratuitously entering for recreational purposes. It creates a new category separate and distinct from those known at common law as licensees or invitees by this language that the gratuitous entry does not:

"* * * confer upon such a person the status of invitee or licensee to whom any duty of care is owed, * * *""

The statute provides that the landowner or tenant who permits any person to enter upon:

"*any property* in the possession or under the control of such landowner or tenant, *for any recreational purpose.*" (Emphasis added)

Under section 19-103, R.C.M.1947, such language includes both real and personal property. To hold otherwise this Court would have to ignore section 19-103, the overall context of sections 67-808 and 67-809, and insert the words "any real property" for "any property".

Section 67-808 provides that the landlord or tenant does not by granting such permission:

"extend any assurance that *such property* is safe for any purpose." (Emphasis added)

Again the Court would have to ignore section 19-103, ignore the overall context, and read into the statute "such real property".

None of the foregoing language suggests that the relief from liability extended only to the condition of real property. It seems clear that the overall intent was to give relief from any and all conceivable liability from any act, conduct, or omission, to any person gratuitously present for any recreational purpose. Section 67-808 says:

"* * * such landowner or tenant, shall not be liable to such person for *any injury* to person or property resulting from *any act or* omission of such landlord or tenant, unless *such act or* omission constitutes willful or wanton misconduct." (Emphasis added)

This all-inclusive language covers any affirmative act or conduct, none of which is synonymous with the condition of real estate.

Recreational purposes defined in section 67-809 are all-inclusive; they include hunting, boating, water skiing, swimming, pleasure driving, winter sports, hiking, "or other pleasure expeditions". Can there be any doubt that the landlord or tenant is relieved from liability for gunshot injuries or deaths in hunting accidents; or the physical condition or manner of operation of a boat; or the physical condition or manner of operation of water skis; or similar accidents?

The obvious intent of sections 67-808 and 67-809 was to relieve from liability, as stated. To restrict the broad language used by the legislature this Court would have to insert the word "real" or the words "real property" at various places in section 67-808, and would have to rewrite section 67-809 entirely.

The district court was correct in its analysis.

The second question presented—whether the Company qualifies as a "landowner or tenant" as the terms are used in section 67-808, requires an examination of the legal relationship between the Company and the United States.

Plaintiff insists that the Company is a "mere licensee" of the government; therefore not a "tenant" as that words is used. The defendant Company contends that it occupies the lands as a tenant coupled with a license to utilize the public waters for operation of a hydroelectric generating facility.

The basic features of the writing controlling the legal relationship between the United States and the Company are pertinent. The land upon which the Mystic Lake power plant, flume, tram, railway tracks, and dam are situated is owned by the United States. The Company constructed the improvements, owns the auxiliary equipment, and operates the entire project under a written agreement. The written agreement gives to the Company the occupation, possession, and use of the government-owned land for a period of a fixed term of years. The Company

pays to the United States a contractually fixed annual fee for such occupation, possession and use. Such right of the Company to occupy, possess, and use is not revocable at the mere whim or pleasure of the United States, but exists throughout that term of years as long as each of the parties lives up to and fulfills the terms of the written agreement.

In addition, the United States also licenses the Company to use the water resources of the government in the operation of an electrical generating plan under the provisions of the Federal Power Act. Use of the term ''licensee'' in the agreement is nothing more than a convenience to identify the utility involved; permits the use of forms printed in advance; precludes the necessity for the government to separately type up each page in every agreement in every corner of the land; but does not pretend to connote or define the legal relationship between the parties insofar as the use, occupation, and possession of the land itself is concerned, a legal relationship which is dependent upon the facts.

■ Whether a writing is a lease or a license will be determined not by what the parties choose to call it, nor from the language, but from the legal effect of its provisions. In Stoltze Land Co. v. Westberg, 63 Mont. 38, 44, 206 P. 407, 408, this Court said:

''No particular words, technical or otherwise, or form of expression in an instrument are necessary to constitute it a lease. Any language by which the possession and enjoyment of land is granted for a specified time at a stupulated rental creates a tenancy, and is in effect a lease. * * *''

The basic rule of the *Stoltze* case, quoted above, was reaffirmed by this Court in a later case, Hamilton v. Rock, 121 Mont. 245, 248, 191 P.2d 663, 665, where we said:

''The evidence was sufficient to establish a lease within the rule stated in Stoltze Land Co. v. Westberg, 63 Mont. 38, 206 P. 407, 408, wherein it was said: 'No particular words, technical or otherwise, or form of expression in an instrument are neces-

sary to constitute it a lease. Any language by which the possession and enjoyment of land is granted for a specified time at a stipulated rental creates a tenancy, and is in effect a lease.' * * *'' Also see 53 C.J.S. Licenses § 79.

The nature of a license on the other hand is expressed in Great Falls Waterworks Co. v. Great Northern Ry. Co., 21 Mont. 487, 497, 54 P. 963, wherein the Court discussed parol licenses:

"A license * * * being, by the definition of Jones in his late book on Easements, 'a personal and revocable privilege to do some act or series of acts upon the land of another without possesing any estate therein,' may be created by parol. The [license] gives immunity to the licensee while acting under the privilege, but yet confers no vested right by which he can rightfully enjoy it contrary to the will of the grantor * * *.''

In Waddell v. School Dist. No. 2, 74 Mont. 91, 98, 99, 238 P. 884, this Court stated:

" 'A license is defined as a personal, revocable and unassignable privilege conferred either by writing or parol to do one or more acts on land without possessing any interest therein. It is a distinguishing characteristic of a license that it gives no interest in the land and that it may rest in parol. * * * It is an authority to do a lawful act, which, without it, would be unlawful, and while it remains unrevoked is a justification for the acts which it authorizes to be done.' (17 R.C.L., Sec. 78, p. 564.)

" 'Inasmuch as it is an element of a license that it is personal, as such, it is incapable of being assigned or transferred by the person to whom it is granted. * * *' '' See also, 53 C.J.S. License § 79.

The distinction between leases and licenses is set forth in Herigstad v. Hardrock Oil Co., 101 Mont. 22, 34, 52 P.2d 171;

" 'The test to determine whether an agreement for the use of real estate is a license or a lease is whether the contract gives ex-

clusive possession of the premises as against all the world, including the owner, in which case it is a lease.' ''

The difference is also discussed in 51C C.J.S. Landlord and Tenant § 202(6), pp. 525, 526:

"It has otherwise been stated that a lease differs from a license in that a lease of land conveys an interest in the land, requires a writing to comply with the statute of frauds and transfers possession while a license merely excuses acts done by one on land in the possession of another that without a license would be trespassses, and conveys no interest in land. Definiteness of the space to be occupied is one of the criteria for determining whether the instrument is a lease."

Here, all the requirements for a lease are met. The Order Issuing License, which incorporates within it the regulations of the Federal Power Commission and the provisions of the Federal Power Act, reflects that both a lease and license were contemplated by the parties. The Order itself is twelve pages long, but clearly, we find, the substance of the relationship between the Company and the United States is that of landlord and tenant with regard to the land within the project boundary. Under these circumstances, section 67-808, R.C.M. applies. The order of the district court overruling plaintiff's motion to strike is correct. The writ sought is refused.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, JOHN C. HARRISON and DALY, concur.