[No. G004445. Fourth Dist., Div. Three. Sept. 23, 1988.]

ROBERT WINEINGER et al., Plaintiffs, v.
BEAR BRAND RANCH et al., Defendants and Appellants;
ERIC J. GOODMAN, Defendant and Respondent.

**[Opinion certified for partial publication.†]**

† Parts V, VI, and VII, with the exception of the dispositional paragraph, are not to be published. (Cal. Rules of Court, rule 976.1.)

COUNSEL

Callahan, McCune & Willis and Peter M. Callahan for Defendants and Appellants.

Horvitz, Levy & Amerian, Ellis J. Horvitz and Daniel J. Gonzalez for Defendant and Respondent.

OPINION

LUESEBRINK, J.*—Ken Wineinger, age 17, was one of two passengers in a Toyota Land Cruiser being driven by another 17 year old, defendant and respondent Eric Goodman, when the vehicle careened over a cliff in a residential housing tract. Wineinger was killed. The tract was then being

---

* Assigned by the Chairperson of the Judicial Council.

developed by Bear Brand Ranch and O. Hill Co., the owners and general contractors. Parrott & Wright Construction Co. was the grading and paving contractor responsible for completion of the streets.

Wineinger's heirs were awarded a $638,504 judgment in the ensuing wrongful death action. The jury determined driver Goodman was 20 percent negligent and the developer defendants 80 percent responsible for the accident.[1] The developer defendants have appealed, complaining of instructional and evidentiary errors and an excessive verdict. The plaintiffs have not appeared in this court, but their position has essentially been presented by Goodman, who submitted a respondent's brief.

## I

While returning from a visit to a local shopping center at approximately 8 p.m. on November 8, 1982, Goodman drove two friends, decedent Wineinger and Ray John Rehmeier, in his Toyota Land Cruiser onto a street known as Morning Dove in the Bear Brand Ranch development. Goodman's vehicle had been modified by removing the detachable top, side doors, two small bench seats in the back of the vehicle and the lap belts that serviced them. On the way home from the shopping center, decedent sat in the back of the Land Cruiser without a seat, lap belt or shoulder harness.

Morning Dove had been paved only three days earlier on Friday, November 5. The curbs, gutters and asphalt were in place; but the street remained unlighted and unstriped. It was overcast and dark on November 8 with a light mist. The course followed by Goodman as he ascended Morning Dove was a curving route approximately 1,000 feet up a gradual hill. The pavement and curbing abruptly ended at the crest of the hill. Ten to fifteen feet farther ahead was the edge of a 30-foot deep gully or ravine.

Goodman's vehicle traveled 30 to 40 miles per hour up Morning Dove, drove off the pavement, went over the cliff, and landed upside down in the gully after doing a half flip. Decedent was thrown from the vehicle and died two days later without regaining consciousness. Goodman and the front seat passenger both wore seat belts and escaped injury of any consequence. Indisputably, there was no warning of any sort at the top of Morning Dove to indicate the end of the street or the impending drop.

---

[1] The special verdicts were prepared by counsel for defendant contractors, who did not distinguish between the individual corporate defendants but referred to them jointly for the purpose of determining comparative negligence.

## II

■  The developer defendants first complain of the court's refusal to permit their criminalist to testify that the decedent's blood-alcohol level of .03 percent, recorded within two hours after the accident, could have translated to a reading as high as .10 percent at the time of the accident. They argue this evidence would have impeached Goodman's testimony that he and his companions consumed no alcohol before the accident and would have been evidence of comparative negligence against decedent Wineinger. The court excluded the testimony under Evidence Code section 352, finding its potential prejudice outweighed its probative value. We have no basis to disagree with the trial court on the record before us.

A .10 percent blood-alcohol reading at the time of the accident would only have rendered the decedent under the influence of alcohol for purposes of operating a motor vehicle—not for being a passenger. (Veh. Code, §§ 23152, 23155.) The trial court properly concluded this was insufficient evidence of negligence by decedent.

■  The probative value of such evidence for impeachment purposes is equally weak. Defendant developers' offer of proof was merely that decedent's blood-alcohol could have been as high as .10 percent but there was no evidence as to when such a level might have been attained or when the alcohol might have been consumed by decedent. Its impeachment value as to Goodman, who denied his passenger had any alcohol in his presence, was exceedingly remote given the vagueness of the offer of proof. Defendant developers have failed to demonstrate a clear abuse of discretion by the trial court. (*People* v. *Demery* (1980) 104 Cal.App.3d 548, 558 [163 Cal.Rptr. 814].)

## III

Next, the defendant developers challenge the court's refusal to give a number of requested instructions concerning (1) a landowner's immunity and lack of duty to recreational users of property, (2) comparative negligence by decedent, and (3) the present cash value of plaintiffs' future pecuniary losses. We find no merit in the claims.

■  First, the court refused to instruct per Civil Code section 846.[2] That statute was designed to encourage landowners to allow public access to

---

[2] At the time of the accident, Civil Code section 846 provided: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises

their property for recreational purposes where fear of liability to trespassers might otherwise have led them to deny such access. (*Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 787-788 [147 Cal.Rptr. 431]; *Smith* v. *Scrap Disposal Corp.* (1979) 96 Cal.App.3d 525, 529 [158 Cal.Rptr. 134].) As the California Supreme Court has observed, "The purpose of section 846 is to encourage property owners 'to allow the general public to recreate free of charge on *privately* owned property.' [Citations.] This purpose is achieved by a basic declaration that owners owe 'no duty of care to keep the premises safe' for certain specific recreational purposes." (*Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707-708 [190 Cal.Rptr. 494, 660 P.2d 1168], cert. den. 464 U.S. 915 [78 L.Ed.2d 257, 104 S.Ct. 277].)

In refusing the requested instruction, the trial court focused on the dual roles played by the developer defendants: "The Court: Well, the statute only applies to owners. And in the event the owner desires to wear two hats and be his own contractor, why then the statute loses all of its reason insofar as the contractor is concerned, and therefore would have absolutely no bearing in that split personality or capacity as a contractor. The court so rules." We agree. But there is another reason for upholding the trial court's decision not to instruct the jury on the immunity of Civil Code section 846. While Goodman and decedent's witnesses suggested no impediment to the land cruiser's access to the property, the defendant developers admitted they discouraged any use of the property, recreational or otherwise by erecting barricades, "no trespassing" and "road closed" signs and actively prosecuting individuals discovered on the property. May defendants who actively discourage the use of their property for recreational purposes nonetheless benefit from Civil Code section 846 if someone is injured in a quasi-recrea-

to persons entering for such purpose, except as provided in this section. [¶] A 'recreational purpose,' as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, winter sports, and viewing or enjoying historical, archeological, scenic, natural, or scientific sites. [¶] An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section. [¶] This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner. [¶] Nothing in this section creates a duty of care or ground of liability for injury to person or property."

tional pursuit? That precise issue was not raised at trial, although by that time a number of courts in other jurisdictions had determined a landowner who denied or discouraged recreational use was not entitled to any immunity or reduction in the duty of care otherwise applicable by statute or case law. (See, e.g., *Gibson* v. *Keith* (Del. 1985) 492 A.2d 241, 244-250; *Hughes* v. *Quarve & Anderson Co.* (Minn. 1983) 338 N.W.2d 422, 427; *Georgia Power Co.* v. *McGruder* (1972) 229 Ga. 811 [194 S.E.2d 440, 441]; *Christians* v. *Homestake Enterprises, Ltd.* (1980) 97 Wis.2d 638 [294 N.W.2d 534, 539], revd. on another ground in *Christians* v. *Homestake Enterprises, Ltd.* (1981) 101 Wis.2d 25 [303 N.W.2d 608, 624, fn. 20].)

The precise issue had not been presented in a California court at the time of trial, although appellate panels had recognized analogous limitations and precluded application of Civil Code section 846 to a beachfront residence under construction (*Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727 [191 Cal.Rptr. 160]) and to an open trench in a temporary construction project in a shopping center. (*Paige* v. *North Oaks Partners* (1982) 134 Cal.App.3d 860 [184 Cal.Rptr. 867].) After the trial in this case, however, a California appellate court did have occasion to consider the question and reached a decision in line with the out-of-state and evolving California authority. (*Domingue* v. *Presley of Southern California* (1988) 197 Cal.App.3d 1060 [243 Cal.Rptr. 312].)

In *Domingue,* the plaintiff was riding a bicycle across defendant's property when he fell over a six-foot drop-off and broke his wrist. The trial court granted summary judgment for the defendant based on Civil Code section 846; but the Court of Appeal reversed, finding triable issues of fact as to whether plaintiff's taking a shortcut over defendant's land to a friend's house would be considered a "recreational purpose" under that statute and whether defendant's construction and development constituted a withdrawal of the land from recreational use.

With respect to the latter issue, the Court of Appeal stated, "Civil Code section 846, however, was enacted to encourage property owners 'to allow the general public to recreate free of charge on privately owned property.' [Citation.] A developer who grades house pads and streets on its privately owned land does not do so to enable the public to use that land for recreational purposes but rather for a different proper purpose, tract development and sale. Free recreational use by the public during such development would interfere with that developer's purpose and use of its private property and is consequently not encouraged. Civil Code section 846 may not be construed without considering the intent of the Legislature in enacting it. The Legislature obviously did not intend to allow or encourage the general public to recreate free of charge on *all* privately owned property of every

kind, nature and state of development. While its application is not limited to land in its natural condition [citation], there are obvious limits to the application of the section." (197 Cal.App.3d at pp. 1066-1067, fn. omitted.)

When this accident occurred, the area in question could by no means be considered recreational land. It was not a completely graded and completed project, but it had not been abandoned to return to nature either. *Domingue* explains, "As noted in *Potts,* the Legislature could not have intended the Civil Code section 846 immunity to apply to such a property: 'A grant of immunity would merely encourage the negligent maintenance of construction sites, without, however, achieving the specific public benefit the Legislature envisioned.' (*Potts* v. *Halsted Financial Corp., supra,* 142 Cal.App.3d at p. 730.) This case far more clearly fits that category than the category of recreational land, as the respondents have attempted to do. It is highly developed land which just did not yet have a house built on it. The land had plainly been withdrawn from public recreational use." (*Domingue* v. *Presley of Southern California, supra,* 197 Cal.App.3d at p. 1070.) So had the Bear Brand Ranch property; we find no error in the court's conclusion that the defendants were not entitled to the protection of Civil Code section 846.

## IV

■ Next, the developer defendants argue the trial court failed to instruct the jury as to the comparative negligence of decedent which, they claim, consisted of "decedent's riding in the back of the land cruiser without seat, safety belt or top, his failure to object to the route taken by defendant Goodman; his failure to object to defendant Goodman's driving at 30-40 miles per hour on a paved but unmarked and unlighted street; and, his consumption of an alcoholic beverage." Citing *Rodriquez* v. *Lompoc Truck Co.* (1964) 227 Cal.App.2d 769 [39 Cal.Rptr. 117], they argue comparative negligence was an appropriate issue for the jury. Life is not so simple, however.

We have already agreed the trial court properly excluded evidence of the decedent's consumption of alcohol. The other potential bases for a finding of comparative negligence as to the decedent simply failed to raise an issue for jury consideration as they were either unrelated to the issue of proximate cause, or were derivative of Goodman's negligence, or involved matters over which decedent had little, if any, control, e.g., removal of the top, seats, and seat belts. Despite the language in *Rodriquez,* we are bound by the standard articulated in *LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 875 [148 Cal.Rptr. 355, 582 P.2d 946]: "[A] contributory negligence instruction cannot be given unless the record shows that

some negligence on the part of the plaintiff proximately caused his or her injury. [Citations.]"

As to the route taken, Goodman testified he had driven it before without incident in his four-wheel drive vehicle; and, assuming decedent should have objected, it is pure speculation he would have been effective. The same is true of the alleged failure to object to the speed of the vehicle. Presumably, the route selected by Goodman, the condition of his vehicle, and the manner in which Goodman operated his vehicle were the bases for assessing 20 percent negligence to Goodman. Decedent had little or no control over any of them. More significantly, however, as the jury determined, the most important cause of the accident and the death of decedent was the plunge over a 30-foot cliff at the end of a paved street.

### V-VII*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Respondent Goodman is entitled to costs on appeal.

Scoville, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied October 19, 1988, and appellants' petition for review by the Supreme Court was denied December 21, 1988.

---

* See footnote, *ante,* page 1003.