[No. G007151. Fourth Dist., Div. Three. Oct. 15, 1990.]

LAURA ANN MYERS, Plaintiff and Appellant, v.
ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY
et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of sections 2, 3, 4, and 5 of part II.

**COUNSEL**

Lawrence S. Ross for Plaintiff and Appellant.

Hill, Farrer & Burrill, William M. Bitting, Kevin H. Brogan, Ondrea Dae Hidley and Maurice Mandell II for Defendants and Respondents.

OPINION

**MOORE, Acting P. J.**—Plaintiff Laura Ann Myers was injured when she fell off a motorcycle driven by defendant Steven Zaharoff on property maintained and controlled by defendant Atchison, Topeka and Santa Fe Railway Company (Santa Fe). Myers sued alleging Santa Fe negligently or wilfully maintained a drainage culvert on its property and failed to warn others of the dangerous condition, and Zaharoff negligently operated the motorcycle. After a jury trial, judgment was entered for both defendants. On appeal, Myers contends the lower court made several erroneous rulings regarding the application and effect of Civil Code section 846[1] and challenges the sufficiency of the evidence to support the jury's finding Zaharoff was not negligent.

I

FACTS

On April 27, 1985, Myers, her boyfriend, and her younger sister went to a street overpass to watch an air show being put on at a nearby military installation. The overpass spanned a railroad right-of-way, running in a generally north-south direction, that was maintained and controlled by Santa Fe. While there, Myers met several friends from her place of employment. One coemployee present was Zaharoff who arrived at the overpass by motorcycle.

Over the next few hours, Zaharoff took Myers on two motorcycle rides along Santa Fe's right-of-way. Zaharoff reached the right-of-way by taking a path down an embankment. The right-of-way was not enclosed by a fence and neither Myers nor Zaharoff saw any "No Trespassing" signs.

The first ride was uneventful. Both Myers and Zaharoff saw people riding motorcycles and other vehicles along Santa Fe's right-of-way.

A short time later, Zaharoff took Myers for a second motorcycle ride southbound primarily along the right-of-way's shoulder. After driving two or three miles, Zaharoff reversed course and began returning to the overpass. During the return trip, Zaharoff drove approximately 20 to 25 miles per hour along the roadbed's eastside shoulder midway between the rock ballast for the tracks and the underbrush growing parallel to it. The motorcycle fell into a ditch created by the drainage culvert running perpendicular

---

[1] All statutory references are to the Civil Code unless otherwise specified.

to and underneath the tracks. Myers was either thrown or fell off the motorcycle and suffered injuries giving rise to this lawsuit.

Zaharoff testified he first saw the ditch 75 to 100 feet before reaching it but thought it was only a small dip in the path. Fifteen to twenty feet from the ditch, he realized it was much deeper, but did not have time to maneuver around it. He told Myers to "hang on."

Myers's accident reconstruction expert testified a motorcycle driver could not see the ditch until he was within 75 feet of it. At 25 miles per hour, a driver would not have sufficient reaction time to avoid the ditch. A witness residing next to Santa Fe's right-of-way with prior motorcycle experience retraced Zaharoff's path immediately after the accident. She also concluded the ditch could not be seen until a cyclist was too close to stop. The defense introduced a photograph depicting a pathway skirting around the ditch. Zaharoff denied seeing the pathway on the day of the accident.

Conflicting testimony was introduced concerning the purpose for the second motorcycle ride. Initially, Myers testified she went with Zaharoff to get something to drink for herself and her sister. Later, Myers testified she also took the ride to learn how to drive a motorcycle and to try to make her boyfriend jealous. Santa Fe introduced prior statements by Myers admitting the second trip was recreational, that she did not believe they were going to any particular place, and that she could not recall driving Zaharoff's motorcycle.

Zaharoff testified he only asked Myers if she wanted to go for another ride, denied they were looking for a place to get something to drink or eat, and never heard Myers say she was thirsty. However, Myers introduced a prior statement by Zaharoff where he admitted one reason for the second trip was to get something to eat. Zaharoff also claimed Myers did not ask him how to operate the motorcycle, nor did he show her how to do so.

Four Santa Fe employees responsible for the maintenance of the right-of-way testified at trial. All four stated Santa Fe has a policy of asking trespassers on its rights-of-way to leave the premises to protect them from being struck by fast-moving trains. Santa Fe also erects "No Trespassing" signs along its rights-of-way. However, Santa Fe does not fence the rights-of-way because it would be too expensive and impractical.

Nonetheless, the employees acknowledged persons use the rights-of-way to jog and for other activities, and stated they enforced the company's policy in different ways. Two employees testified they would order a jogger,

cyclist, or other person off a right-of-way if he or she was on the tracks. A third employee stated he chased people off if they were too close to the tracks. He considered the portion of the shoulder where Zaharoff was driving the motorcycle to be dangerous.

Santa Fe's division manager stated the company had agreements with some municipalities creating bicycle trails along its rights-of-way, but none was located where Myers's accident occurred. In addition, a witness living adjacent to the accident site testified the right-of-way was used by children, bicyclists, and, on the average, at least one motorcyclist a month.

At trial, Santa Fe requested the court to instruct the jury on the recreational use immunity provided by section 846. Myers objected, arguing it would not comport with the statute's purpose and Santa Fe's property is not the type that should be given limited immunity. The court granted Santa Fe's request relying on *Colvin v. Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306 [240 Cal.Rptr. 142]. In addition, it submitted a special verdict prepared by Santa Fe. Question number one of the special verdict asked: "At the time of her accident, was plaintiff on the property of [Santa Fe] for a recreational purpose?"

The court also agreed to give Myers's instruction A which stated as follows: "The fact that LAURA ANN MYERS was 'riding' on the back of a motorcycle does not mean that this was a recreational purpose. Whether she was 'riding' within the meaning of the [statute] depends on the totality of facts and circumstances presented in this case, including the path taken, the length and purpose of the journey, and any prior use of the land. While her subjective intent will not be controlling, it is relevant to show purpose." However, the court inadvertently failed to read the instruction to the jury. During closing argument, counsel for both Myers and Santa Fe referred to the omitted instruction. Myers's attorney also quoted part of it.

Subsequently, the jury returned a special verdict unanimously finding Myers was on Santa Fe's property for a recreational purpose, Santa Fe did not wilfully or maliciously fail to guard her or warn of a dangerous condition, and Zaharoff did not negligently operate the motorcycle. Based on the special verdict, the court entered judgment for both defendants. This appeal followed.

## II

### DISCUSSION

1. *Application of section 846*

Myers challenges the lower court's application of section 846 to this case on three grounds. First, she contends Santa Fe's right-of-way is not suitable for recreational use. Second, Myers argues the court erred by failing to permit the jury to determine the question of whether the premises were suitable for recreational purposes. Third, she claims Santa Fe's failure to record the notice specified in section 813 precludes it from receiving limited immunity under section 846.

With certain exceptions not relevant here, section 846 states, "An owner of an estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section." The phrase "recreational purpose" includes "such activities as . . . riding, including . . . all . . . types of vehicular riding . . . ."

"Section 846 was enacted to encourage property owners to allow the general public to engage in recreational activities free of charge on privately owned property. [Citation.] The statutory goal was to constrain the growing tendency of private landowners to bar public access to their land for recreational uses out of fear of incurring tort liability. [Citation.]" (*Hubbard* v. *Brown* (1990) 50 Cal.3d 189, 193 [266 Cal.Rptr. 491, 785 P.2d 1183]. See also *Vallardares* v. *Stone* (1990) 218 Cal.App.3d 362, 367 [267 Cal.Rptr. 57]; *Paige* v. *North Oaks Partners* (1982) 134 Cal.App.3d 860, 863 [184 Cal.Rptr. 867]; *Parish* v. *Lloyd* (1978) 82 Cal.App.3d 785, 787-788 [147 Cal.Rptr. 431].)

■ When interpreting section 846, a court must give it a reasonable interpretation and application in accord with the statute's purpose and the intent of the Legislature. A purely literal interpretation of the statute will not prevail over the purpose of the legislation. (*Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727, 730 [191 Cal.Rptr. 160]; *Paige* v. *North Oaks Partners, supra*, 134 Cal.App.3d at p. 863; *Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1027 [157 Cal.Rptr. 612] overruled on other grounds in *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707 [190 Cal.Rptr. 494, 660 P.2d 1168].)

■ Despite its broad language, case law has limited the statute's scope. In *Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at pages 704-710, the Supreme Court held section 846 does not apply to injuries occurring on property owned by public entities. *Gerkin* v. *Santa Clara Valley Water Dist., supra,* 95 Cal.App.3d 1022 held the term "hiking" appearing in section 846 could not be construed to include "mere 'walking' or traveling on foot apart from any recreational context." (*Id.* at p. 1027.)

Several cases have held section 846 does not apply to accidents occurring on active construction sites because such property is unsuitable for recreational use. (*Domingue* v. *Presley of Southern California* (1988) 197 Cal.App.3d 1060, 1066-1070 [243 Cal.Rptr. 312]; *Potts* v. *Halsted Financial Corp., supra,* 142 Cal.App.3d 727, 730, 732; *Paige* v. *North Oaks Partners, supra,* 134 Cal.App.3d 860, 864-865.) Also, in an opinion issued by this .court after the trial in the present case, we held a landowner who actively discourages the use of his or her property for recreational purposes is not entitled to claim the statute's limited immunity. (*Wineinger* v. *Bear Brand Ranch* (1988) 204 Cal.App.3d 1003, 1008-1010 [251 Cal.Rptr. 681].)

We conclude the shoulder of a railroad right-of-way is not per se excluded from section 846's scope. In *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737 [140 Cal.Rptr. 905], the Court of Appeal held section 846 barred recovery of damages for simple negligence by a plaintiff who was injured when he dove from the defendant railroad's trestle into a river. In so ruling, the court noted: "The Legislature probably decided not only that freedom of recreation should be encouraged, but also that it is unfair to permit claims for negligence in favor of persons who choose to enter the lands of others for the described activities . . . ." (*Id.* at p. 749.)

*Lostritto*'s interpretation of section 846 has been criticized. (See *Potts* v. *Halsted Financial Corp., supra,* 142 Cal.App.3d at 731; Comment, *Should Landowners Have Tort Immunity From Recreational Users?* (1988) 16 Western St.U. L.Rev. 201, 217-221, 237.) But while the Legislature has amended section 846 four times since *Lostritto* was decided, it has not acted to overrule the case. ■ " 'Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.' [Citations.] 'There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts.' [Citation.] " (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134], fn. omitted. See also *Hejmadi* v. *AMFAC, Inc.* (1988) 202

Cal.App.3d 525, 544 [249 Cal.Rptr. 5]. Compare *People* v. *Drew* (1978) 22 Cal.3d 333, 347, fn. 11 [149 Cal.Rptr. 275, 583 P.2d 1318].)

■■■ Furthermore, although similar laws have been enacted in over 40 states (see Comment, *Should Landowners Have Tort Immunity From Recreational Users?, supra,* 16 Western St. U. L.Rev. at p. 204), we are not aware of any decision holding a railroad right-of-way is excluded from a recreational use statute. In fact, several cases have applied similar laws to accidents occurring on trains and railroad property. (See *Iannotti* v. *Consolidated Rail Corp.* (1989) 74 N.Y.2d 39, 46-47 [544 N.Y.S.2d 308, 312, 542 N.E.2d 621] [injury on abandoned railroad right-of-way adjacent to existing tracks]; *Power* v. *Union Pac. R. Co.* (9th Cir. 1981) 655 F.2d 1380, 1387 [applying Washington law, judgment for plaintiff in wrongful death action arising from train accident reversed for determination whether recreational use statute applied]; *Lovell* v. *Chesapeake & Ohio Railroad Company* (6th Cir. 1972) 457 F.2d 1009, 1010-1011 [judgment for defendant in wrongful death action involving a train accident affirmed under Michigan recreational use statute]; *State* ex rel. *Tucker* v. *District Court* (1970) 155 Mont. 202 [468 P.2d 773] [order denying motion to strike defense based on recreational use statute upheld in personal injury action alleging negligent operation and maintenance of a private railway].)

We also note a crucial distinction between the present case and the construction site decisions relied upon by Myers. In the construction site cases, the plaintiffs were injured by the building activity, which the appellate courts held rendered the property unsuitable for recreational use. The same is not true here.

■■■ Myers's injury occurred when the motorcycle she was riding fell into a ditch created by a drainage culvert underlying Santa Fe's tracks. Motorcycle riding can constitute recreational activity under section 846. (*Parish* v. *Lloyd, supra,* 82 Cal.App.3d at pp. 786-787. See also *Johnson* v. *Sunshine Min. Co., Inc.* (1984) 106 Idaho 866 [684 P.2d 268, 270].)
■■■ Also, the fact that Myers was injured by a condition caused by a man-made structure will not preclude application of the statute. (*Nazar* v. *Rodeffer* (1986) 184 Cal.App.3d 546, 554 [229 Cal.Rptr. 209]. See also *Colvin* v. *Southern Cal. Edison Co., supra,* 194 Cal.App.3d 1306.)
**(2c)** The aspect of Santa Fe's right-of-way that purportedly makes it unsuitable for recreational use is the potential for injury or death from being

struck by a passing train. Here, as in *Lostritto*, Myers was not injured by a train, but by her use of Santa Fe's property to ride a motorcycle.[2]

The lower court relied on *Colvin v. Southern Cal. Edison Co., supra,* 194 Cal.App.3d 1306, which involved a public utility easement giving defendant authority to construct and maintain electrical lines over another person's property. In *Colvin*, the Court of Appeal distinguished between the utility's physical facilities, which "were not designed or suitable for recreational use," and the area underneath the transmission lines. It noted the latter area "consisted of natural terrain" that was "open to anyone for hiking, cycle riding, exploring, roaming, and (in terms of § 846) 'enjoying . . . natural . . . sites.' . . ." (*Id.* at p. 1314.) The same may be said for Santa Fe's right-of-way. It consists of a strip of land intended for the movement of large, fast-moving trains. The public enters the railroad's right-of-way and uses the premises for a variety of recreational activities. In some locations the public's use is even with Santa Fe's express permission. While the railway tracks may be unsuitable for recreational use, the remaining portion of the right-of-way can be and is used for recreational pursuits.

Myers's reliance on our prior decision in *Wineinger v. Bear Brand Ranch, supra,* 204 Cal.App.3d 1003 is also misplaced. First, we note *Wineinger* involved an accident on an active construction site. In part, we relied on that fact in affirming the trial court's decision not to instruct on section 846. (204 Cal.App.3d at pp. 1009-1010.) Second, the evidence does not support a conclusion Santa Fe actively enforced its somewhat equivocal policy of removing trespassers. The division manager testified that asking trespassers to leave a right-of-way was only a general policy, not a regulation. The other employees had varying opinions on when and where to enforce the policy. Finally, as noted, in some cities Santa Fe permits bicycle riders to use its rights-of-way.

Alternatively, Myers contends the lower court erred by not allowing the jury to decide the issue of whether the right-of-way was suitable for recreational use. We disagree. To date, all but one of the cases considering this question have resolved it as a question of law involving statutory interpretation. (See *Wineinger v. Bear Brand Ranch, supra,* 204 Cal.App.3d 1003; *Colvin v. Southern Cal. Edison Co., supra,* 194 Cal.App.3d 1306; *Potts*

---

[2] We recognize that recreational use of active railroad rights-of-way should be discouraged. Nonetheless, given section 846's broad language, case precedent, the practical difficulties of policing property of this nature, and the tenuous connection between the accident that occurred and the obvious danger presented by an active railroad right-of-way, the lower court properly found the statute applied. We express no opinion on whether the same result would follow from an injury on the tracks or by a train or somehow related to the railroad's operation of the right-of-way.

v. *Halsted Financial Corp.*, *supra*, 142 Cal.App.3d 727; *Paige* v. *North Oaks Partners*, *supra*, 134 Cal.App.3d 860.) The only exception is *Domingue* v. *Presley of Southern California*, *supra*, 197 Cal.App.3d 1060. In *Domingue*, the factual question presented was whether an active construction site existed on defendant's property since the evidence indicated there had been no building activity on it for some time prior to the accident. (*Id.* at pp. 1068, 1070.) In light of the nature of Myers's accident, we conclude the question of suitability for recreational use was properly one for the court to decide as a matter of law.

■ Finally, Myers argues Santa Fe's failure to record the notice permitted by section 813 supports denial of the limited immunity provided by section 846. We disagree. Section 813 permits an owner of land to record a notice stating the public's use of his or her property is by permission and subject to the owner's control. As both parties note, "[t]he purpose of section 813 [is] to prevent prescriptive rights from arising when members of the general public use[] private property for recreation . . . ." (*Phillips* v. *United States* (9th Cir. 1979) 590 F.2d 297, 299.) Nothing in section 813 or section 846 indicates the failure to comply with the former statute defeats a landowner's right to the limited immunity created by the latter provision.

Accordingly, we conclude the lower court properly found section 846 applied to this case.

2.-5.*

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

III

DISPOSITION

The judgment is affirmed. Respondents shall recover their reasonable costs on appeal.

Sonenshine, J., and Crosby, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 3, 1991.

---

*See footnote, *ante*, page 752.