**Joann RAVELL, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CV 91–2842 KN (JRx).**

United States District Court,
C.D. California.

Aug. 26, 1992.

Jacques Bugelmans, Duke L. Peters, Los Angeles, CA, for appellant.

Lourdes G. Baird, U.S. Atty., Leon W. Weidman, Asst. U.S. Atty., Chief, Civ. Div., Marcus M. Kerner, Asst. U.S. Atty., Los Angeles, CA, for defendant.

### ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENYON, District Judge.

The Court, having received and considered Defendant's Motion for Summary Judgment, and the papers filed in support thereof and in opposition thereto, hereby GRANTS Defendants' Motion for Summary Judgment.

## I. BACKGROUND

The facts in this case are not in dispute. The plaintiff, Joann Ravell, was born on November 16, 1937. On November 12, 1988, Ms. Ravell attended the Norton Air Force Base Air Show. She had been invited to the event by her son, an Air Force officer stationed at Norton. The open house had been publicized in the media and a general invitation had been extended to the public at large. The Air Force does not charge admission to the air show. An estimated 300,000 people attended the event.

Norton Air Force Base is usually closed to the members of the general public and, except for the yearly air show, permission must be secured at the main gate for a member of the public to enter the base. A security clearance is required for access onto the flight line.

During the air show, the plaintiff was walking on the flight line, an area open to the public on this day. While looking up at aircraft performing aerobatics, Ms. Ravell tripped and fell over a tie-down hook inserted in the flight line.

There are hundreds of these tie-down hooks imbedded in the tarmac. Tie-downs serve as a static ground for aircraft, and can serve as a tie-down for smaller aircraft. Each tie-down hook is located in a depression in the flight line approximately twelve inches (12″) long, four inches (4″) wide and four inches (4″) deep. The tie-down hook is a metal loop with a diameter of approximately one and one-half inches (1½″) inserted in the concrete in the center of each such hole. The top of each tie-down hook is flush with the level of the flight line. Prior to April, 1985, the Air Force had a policy of painting the perimeter of the tie-down depressions with bright yellow paint.[1]

The plaintiff brought this negligence suit against the United States for personal injuries sustained as a result of her fall.

## II. ANALYSIS

This Court has jurisdiction over this action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). Because the acts complained of occurred in California, California law governs the substantive aspects of the case. *See* 28 U.S.C. § 1346(b); *Richards v. United States,* 369 U.S. 1, 6–8, 82 S.Ct. 585, 589–90, 7 L.Ed.2d 492 (1962). Under the FTCA, the United States is "liable for negligence in the same manner and to the same extent as a private individual under similar circumstances." *Chidester v. United States,* 646 F.Supp. 189, 193 (C.D.Cal.1986) (citing *Phillips v. United States,* 590 F.2d 297 (9th Cir.1979); *Simpson v. United States,* 652 F.2d 831 (9th Cir.1981)).

### A. THE GOVERNMENT IS IMMUNE FROM LIABILITY UNDER CALIFORNIA CIVIL CODE § 846.

California Civil Code § 846 provides in pertinent part:

An owner of . . . real property . . . owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section.

A "recreational purpose," as used in this section, includes such activities as . . . sightseeing, picnicking, . . . and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites. . . .

This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration . . .; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner. . . .

---

1. There is a dispute as to the reason for painting around the tie-downs. The government provides evidence to indicate that the painting was to indicate that the tie-down was a good static ground, meaning it had less than 10,000 Ohms resistance. (Bratton Depo., p. 25.) However, this disputed fact is not material to the resolution of this case.

The plaintiff does not dispute the fact that she was on the Air Force Base for a "recreational purpose" as defined in § 846. Neither does she claim that the United States was guilty of willful or malicious conduct. However, she asserts that § 846 does not immunize the United States from liability because (1) the flight line at the base is not a tract of land suitable for recreation, and (2) the plaintiff was expressly invited onto the base.[2]

1. *The flight line at Norton Air Force Base is suitable for the recreational purpose for which it was used.*

■ California courts have refused to apply § 846 to areas where entry for recreation should not be encouraged. *See e.g. Domingue v. Presley of Southern California,* 197 Cal.App.3d 1060, 243 Cal.Rptr. 312 (1988) (holding the statute inapplicable to an active construction site). However, the Court finds that the flight line at Norton Air Force Base is suitable for recreational use as defined in § 846, i.e. sightseeing and viewing scientific sights. Unlike *Domingue* and similar cases, the flight line at Norton is not so inherently dangerous such that recreational uses of it should be discouraged.

2. *The plaintiff was not expressly invited onto the base by the United States.*

■ The plaintiff, citing *Simpson v. United States,* 652 F.2d 831, 834–835 (9th Cir. 1981), claims that § 846 is inapplicable because Ms. Ravell was expressly invited onto the base. In *Simpson,* the plaintiff was walking on a trail in the Inyo National Forest Recreation Area when the ground gave way, tossing him into nearby hot water pools and injuring him. The plaintiff claimed that he was "expressly invited" within the meaning of § 846 because of the United States'

"provision of paved parking areas, restroom facilities, and a visitors center offering tours and maps, and because of a sign posted at the entrance to the recreational area that stated: 'We invite you to marvel at the natural wonders of this great forest.'" *Id.* at 834.

After the district court granted summary judgment in favor of the government, the Ninth Circuit reversed, holding that there was a triable issue of material fact as to whether the United States' efforts to warn against the known danger were so feeble as to rise to the level of willful or malicious conduct, rendering § 846 inapplicable. *Id.*

In addition, the Ninth Circuit held that "[s]ummary judgment was improper on the issue of 'express invitation.' The district court must redetermine whether the invitation on the sign and the provision of public facilities alone or together form an 'express invitation' within the meaning of California Civil Code § 846." *Id.* at 835.[3]

In reaching this holding, the *Simpson* court had to distinguish *Phillips v. United States,* 590 F.2d 297 (9th Cir.1979). In *Phillips,* the court held that promotional literature prepared by the Forest Service did not constitute an "express invitation" to the general public. *Phillips* at 299. The *Simpson* court found that *Phillips* was not controlling because the issue in *Simpson* had to do with signs and public facilities rather than promotional literature. *Simpson* at 834.

■ However, this case presents a situation analogous to *Phillips,* in that the alleged "invitation" consisted of nothing more than media publicity announcing the date and time and location of the air show and that the air show is open to the general public. As in *Phillips,* the

---

**2.** The plaintiff also argues, in passing, that the government "reaps consideration, albeit in a somewhat amorphous form by inviting the public to attend an air show at Norton Air Force Base and reaping the public relations which derives therefrom." (Plaintiff's Opposition, p. 6.) The plaintiff provides no support for this claim. The Court finds that any public relations benefit the Air Force reaps by inviting the public onto its land does not constitute "consideration" within the meaning of California Civil Code § 846. Vir-

tually every private landowner who opens his or her land to the public and is granted immunity under § 846 derives some sort of public relations benefit.

**3.** Upon remand, the district court held that the public facilities together with the signs did not constitute an "express invitation" within the meaning of § 846.

"advertisement to the general public is not considered an 'express invitation' to each member of the public to whom the message is beamed. Nothing in the sparse legislative history of Civil Code § 846 suggests that a more encompassing reading of the term "expressly invited" was intended. To the contrary, the little history available indicates that the legislature intended the term 'expressly invited' to include only those persons who were *personally selected by the landowner.*"

*Phillips* at 299 (emphasis added)[4]. *See also Chidester v. United States,* 646 F.Supp. 189, 193 (C.D.Cal.1986) (holding that National Forest Service literature and provision of public facilities did not constitute an "express invitation").

The other cases cited by the plaintiff to support her position are clearly distinguishable, in that they all deal with the circumstances under which one can be categorized as a common law "invitee" rather than a mere "licensee." *See O'Keefe v. South End Rowing Club,* 64 Cal.2d 729, 414 P.2d 830, 51 Cal.Rptr. 534 (1966); *Chafor v. City of Long Beach,* 174 Cal. 478, 163 P. 670 (1917); *Borgnis v. California–Oregon Power Co.,* 84 Cal. App. 465, 258 P. 394 (1927). In this case, the issue is whether the plaintiff falls within the "express invitation" exception to California Civil Code § 846. For the reasons discussed above, *Phillips* is controlling.

### III. CONCLUSION

"Section 846 was enacted to encourage property owners to allow the general public to engage in recreational activities free of charge on privately owned property. [Citation.] The statutory goal was to constrain the growing tendency of private landowners to bar public access to their land for recreational uses out of fear of incurring tort liability. [Citation.]" *Hubbard v. Brown,* 50 Cal.3d 189, 193, 785 P.2d 1183, 266 Cal.Rptr. 491 (1990); *Myers v. Atchison, Topeka & Santa Fe Railway Company,* 224 Cal.App.3d 752, 758, 274 Cal.Rptr. 122 (1990). "When

interpreting section 846, a court must give it a reasonable interpretation and application in accord with the statute's purpose and the intent of the Legislature." *Myers,* 224 Cal. App.3d at 758, 274 Cal.Rptr. 122. The Court believes that the purpose of § 846 and the intent of the Legislature is best served in this case by the granting of immunity. This will encourage the Air Force to continue to open its land to the general public for the air shows that so many people enjoy.

Accordingly, the Defendant's Motion for Summary Judgment is **GRANTED** and the Plaintiff's action is **DISMISSED** with prejudice.

IT IS SO ORDERED.

---

4. The plaintiff's assertion that she was personally invited to the air show by her son, an Air Force officer, does not make her an "express invitee" of the land owner, the United States. Any invitation given by her son was not within the scope of his office or employment. Therefore, the plaintiff could not reasonably interpret it as an "express invitation" of the United States government.