[No. S027366. March 15, 1993.]

JOSE ORNELAS, a Minor, etc., Plaintiff and Appellant, v.
CLINTON RANDOLPH, Defendant and Respondent.

## COUNSEL

Bauman & Rose, Ann Bryce Cushing, Elva Gonzalez Funes and Elke Gordon Schardt for Plaintiff and Appellant.

Mills, Lane & Derryberry, George M. Stevens, Jr., and David F. Boettcher for Defendant and Respondent.

Ronald A. Zumbrun, Anthony T. Caso, Alan W. Foutz, Nancy N. McDonough and Carolyn S. Richardson as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**ARABIAN, J.**—The State of California is blessed with an abundance of scenic treasures. Its natural landscape contains over 1,100 miles of Pacific shoreline, massive mountains, magnificent lakes and sweeping deserts. Such diversity and contrast lend to its appeal as a place where recreational pursuits may flourish, at times on realty owned by others.

We granted review in this case to resolve a long-standing controversy over the scope of Civil Code section 846, which immunizes private landowners from liability for injuries sustained by recreational users of their property. We conclude, under settled principles of statutory construction, that the Legislature intended the statutory immunity to include all private property, and defined "recreational purpose" so broadly as to apply to plaintiff's conduct here. Accordingly, we shall reverse the judgment of the Court of Appeal.

### FACTS

The farms of California's heartland extend some 465 miles through the center of the state. Defendant Clinton Randolph (defendant) owns a large parcel of property in the City of Delano in Kern County. One part of the property is plowed and furrowed for crops. Another part contains a small rental house. A third portion consists of an open area where defendant stores old farm equipment, machinery and irrigation pipes. Defendant's property lies adjacent to a residential subdivision where plaintiff Jose Ornelas (plaintiff), who was eight years old at the time in question, lived with his family.

On January 2, 1989, plaintiff, together with five other children, was playing on that portion of the property where the farm equipment was stored. Several of the children were on top of a piece of old machinery when a metal pipe dislodged and fell on plaintiff, causing injuries. Plaintiff was not on the equipment at the time, but was sitting nearby playing with a hand-held toy when the accident occurred.[1] Plaintiff's mother had cautioned him several times prior to the accident not to play on defendant's property.

Plaintiff, acting by and through his guardian ad litem Rita Ornelas (plaintiff's mother), filed a complaint for personal injury against defendant. Defendant answered and, following discovery, moved for summary judgment on several grounds including Civil Code section 846 (section 846) immunity.

---

[1] The record is unclear whether plaintiff entered the property with the other children for the purpose of playing on the farm equipment or simply "tagged along" to observe. (See *post*, p. 1102 .)

The trial court granted summary judgment in favor of defendant on that basis. However, the Court of Appeal reversed, holding that section 846 was inapplicable because that portion of the land used to store defendant's equipment "had no legitimate recreational use."

DISCUSSION

### 1. *The Statutory Elements*

Section 846 establishes limited liability on the part of a private landowner for injuries sustained by another from recreational use of the land.[2] The statute provides an exception from the general rule that a private landowner owes a duty of reasonable care to any person coming upon the land. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Valladares* v. *Stone* (1990) 218 Cal.App.3d 362, 366 [267 Cal.Rptr. 57]; *Charpentier* v. *Von Geldern* (1987) 191 Cal.App.3d 101, 107 [236 Cal.Rptr. 233]; *English* v. *Marin Mun. Water Dist.* (1977) 66 Cal.App.3d 725, 731 [136 Cal.Rptr. 224].) Under section 846, an owner of any estate or other interest in real property owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give recreational users warning of hazards on the property, unless: (1) the landowner willfully or maliciously fails to guard or warn against a dangerous condition, use, structure or activity; (2) permission to enter for a recreational purpose is granted for a consideration; or (3) the landowner expressly invites

---

[2]The statute in full provides: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section. [¶] A 'recreational purpose,' as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites. [¶] An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for such purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section. [¶] This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner."

rather than merely permits the user to come upon the premises. The landowner's duty to the nonpaying, uninvited recreational user is, in essence, that owed a trespasser under the common law as it existed prior to *Rowland* v. *Christian, supra,* 69 Cal.2d 108; i.e., absent willful or malicious misconduct the landowner is immune from liability for ordinary negligence. (See *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 706 [190 Cal.Rptr. 494, 660 P.2d 1168]; *Charpentier* v. *Von Geldern, supra,* 191 Cal.App.3d at p. 108; *New* v. *Consolidated Rock Products Co.* (1985) 171 Cal.App.3d 681, 688 [217 Cal.Rptr. 522].)[3]

Thus, the Legislature has established two elements as a precondition to immunity: (1) the defendant must be the owner of an "estate or any other interest in real property, whether possessory or nonpossessory"; and (2) the plaintiff's injury must result from the "entry or use [of the 'premises'] for any recreational purpose." (§ 846.)

### 2. *Recreational Purpose*[4]

 Turning first to the "recreational" element of section 846, we have little difficulty in upholding the trial court's implicit finding that plaintiff entered or used defendant's property for a recreational purpose within the meaning of the statute. Section 846 currently provides that a " 'recreational purpose,' as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites."[5]

Plaintiff does not contend that the list of activities set forth in section 846 is exhaustive; nor indeed would the plain language of the statute support

---

[3]Enacted in 1963, section 846 was one of the early recreational immunity statutes. A model act was subsequently developed by the Council of State Governments in 1965 and has since been adopted in many states. (Council of State Governments, Suggested State Legislation (1965) vol. XXIV, pp. 150-152; see, generally Barrett, *Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability* (1977-1978) 53 Wash. L.Rev. 1, 2, fn. 10; Annot., Liability Limitation—Land Use (1986) 47 A.L.R.4th 262.)

[4]Although it was raised and briefed on appeal, the Court of Appeal did not reach the issue whether plaintiff entered or used the property for a "recreational purpose," because it concluded that the property was not "suitable" for recreation. We invited and received supplemental briefing on this point.

[5]The Legislature has amended the statute several times since its enactment in 1963 (Stats. 1963, ch. 1759, § 1, p. 3511) to add various types of activities to its list of recreational purposes. A 1971 amendment inserted "rock collecting." (Stats. 1971, ch. 1028, § 1, p. 1975.) The following year, the Legislature added "animal and all types of vehicular riding" (Stats. 1972, ch. 1200, § 1, p. 2322), and in 1976 included "spelunking." (Stats. 1976, ch. 1303, § 1, p. 5859.) In 1978, the Legislature enacted a more comprehensive amendment to section 846,

such a claim. The statutory definition of "recreational purpose" begins with the word "includes," ordinarily a term of enlargement rather than limitation. (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 639 [268 P.2d 723]; 2A Sutherland, Statutory Construction (4th ed. 1973) § 47.07, pp. 81-82.) **(3)** To be sure, the principle of *ejusdem generis* provides that "when a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope. [Citations.]" (*Moore* v. *California State Board of Accountancy* (1992) 2 Cal.4th 999, 1011-1012 [9 Cal.Rptr.2d 358, 831 P.2d 798].) The examples included in section 846, however, do not appear to share any unifying trait which would serve to restrict the meaning of the phrase "recreational purpose." They range from risky activities enjoyed by the hardy few (e.g., spelunking, sport parachuting, hang gliding) to more sedentary pursuits amenable to almost anyone (e.g., rock collecting, sightseeing, picnicking). Some require a large tract of open space (e.g., hunting) while others can be performed in a more limited setting (e.g., recreational gardening, viewing historical, archaeological, scenic, natural and scientific sites). Moreover, as discussed more fully in the section which follows, the statute draws no distinction between natural and artificial conditions; "it specifically mentions 'structures'—it obviously encompasses improved streets." (*Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at pp. 706-707.) Thus, it is not limited to activities which take place outdoors, and does not exclude recreational activities involving artificial structures.

Accordingly, because the list of examples provided by the Legislature does not effectively limit the meaning of "recreational purpose," we conclude that entering and using defendant's property to play on his farm equipment invokes the immunity provisions of section 846. As noted, a "recreational" injury may result as readily from playing on a manmade object as on a natural edifice. Therefore, for our purposes here, clambering about on farm equipment is no different in kind from scaling a cliff or climbing a tree. (See *Valladares* v. *Stone, supra,* 218 Cal.App.3d at p. 369.) Each is clearly recreational in nature.

rewriting the first paragraph to provide, in pertinent part, that a landowner owed no duty to keep the premises safe for "any recreational purpose," and adding a second paragraph defining "recreational purpose" to include "such activities as" those previously listed plus picnicking, nature study, nature contacting, recreational gardening, gleaning, winter sports and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites." (Stats. 1978, ch. 86, § 1, p. 221.) The Legislature subsequently continued its piecemeal expansion of activities included within the definition of "recreational purpose," inserting "sport parachuting" in 1979 (Stats. 1979, ch. 150, § 1, p. 347) and "hang gliding" in 1988. (Stats. 1988, ch. 129, § 1, p. 507.)

Plaintiff contends, however, that he raised a triable issue as to whether he entered the property to play on the equipment, or merely accompanied the other children for unspecified reasons. ▮ Generally, whether one has entered property for a recreational purpose within the meaning of the statute is a question of fact, to be determined through a consideration of the "totality of the facts and circumstances, including . . . the prior use of the land. While the plaintiff's subjective intent will not be controlling, it is relevant to show purpose." (*Gerkin* v. *Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1027 [157 Cal.Rptr. 612].) ▮ The record here discloses that plaintiff was injured while he was sitting on the ground, playing with a hand-held toy. He testified that just prior to the accident he had declined an invitation to climb on the equipment with the other children because he was "tired from playing." The record also disclosed that children had previously played on the equipment, and that plaintiff's mother had warned him several times not to play on defendant's property.

In these circumstances, whether plaintiff entered the property to play on the equipment, or merely accompanied the other children at play, is immaterial. In either case, his presence was occasioned by the recreational use of the property, and his injury was the product thereof. We discern no meaningful distinction, for purposes of section 846, between the passive spectator and the active participant. Both take advantage of the recreational opportunities offered by the property; neither, therefore, may be heard to complain when injury results therefrom. The trial court's implicit finding that plaintiff entered or used defendant's property for a recreational purpose within the meaning of section 846 was, therefore, correct.[6]

### 3. *Property Subject to the Statute*

As noted earlier, section 846 sets forth two elements as a precondition to immunity: the injury must result from the use of the property for a recreational purpose, as discussed above, and must occur on land in which the defendant owns an "estate or any other interest in real property, whether possessory or nonpossessory." On its face, therefore, the ownership requirement appears to be both exceptionally broad and singularly unambiguous. The language was not always so comprehensive. As originally enacted the statute immunized only the owner "of any estate in real property." (Stats. 1963, ch. 1759, § 1, p. 3511.) It was subsequently amended, however,

---

[6]Although the parties also disputed whether defendant had actual or constructive notice of the danger posed by the equipment, plaintiff did not appeal the trial court's implicit finding that defendant did not willfully or maliciously fail to warn or guard against a dangerous condition. (See § 846 ["This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity . . ."].) Accordingly, the issue was not preserved for review on appeal.

following a pair of appellate decisions holding that section 846 applied exclusively to holders of *possessory* interests in real property. (Stats. 1980, ch. 408, § 1, p. 797; *Hubbard* v. *Brown* (1990) 50 Cal.3d 189 [266 Cal.Rptr. 491, 785 P.2d 1183]; *Darr* v. *Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895 [157 Cal.Rptr. 90]; *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d 903 [159 Cal.Rptr. 125].) Thus, as we have observed, the current statute articulates an "exceptionally broad definition of the types of 'interest' in property which will trigger immunity." (*Hubbard* v. *Brown, supra,* 50 Cal.3d at p. 192 [holding that the holder of a permit to graze livestock on federal lands is an owner of an "interest" in real property under § 846; see also *Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d 699 [§ 846 applies only to private landowners, not public entities].)

### 4. *Suitability Exception*

Beginning with *Paige* v. *North Oaks Partners* (1982) 134 Cal.App.3d 860 [184 Cal.Rptr. 867], and continuing through a series of decisions culminating in the case under review (see *Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727 [191 Cal.Rptr. 160]; *Nazar* v. *Rodeffer* (1986) 184 Cal.App.3d 546, 554-555 [229 Cal.Rptr. 209]; *Colvin* v. *Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306 [240 Cal.Rptr. 142]; *Domingue* v. *Presley of Southern California* (1988) 197 Cal.App.3d 1060 [243 Cal.Rptr. 312]; *Wineinger* v. *Bear Brand Ranch* (1988) 204 Cal.App.3d 1003 [251 Cal.Rptr. 681]; *Valladares* v. *Stone, supra,* 218 Cal.App.3d at pp. 369-370; *Myers* v. *Atchison, Topeka & Santa Fe Railway Co.* (1990) 224 Cal.App.3d 752, 759 [274 Cal.Rptr. 122]), the Courts of Appeal have recognized what amounts to a *third,* nontextual element of section 846 immunity. They have held, in addition to the requisite interest in land and recreational purpose, that the property in question must also be "suitable" for a recreational pursuit in order to qualify for the statutory immunity.

In other words, if a recreationist enters land to engage in one of the enumerated activities, and it develops that, in the court's judgment, the land is inappropriate for that use, the statute will not apply and the landowner will be liable if the recreationist is injured. As is true of the first two elements, the burden of proof as to "suitability" rests with the defendant. (*Domingue* v. *Presley of Southern California, supra,* 197 Cal.App.3d at p. 1070.)

The reasoning behind the judicially created "suitability" exception is relatively simple. Because, the courts have held, the purpose of section 846 is to encourage owners to allow the general public to use their land for recreational purposes, the legislative goal is not served unless the property is the kind on which recreational pursuits are appropriate or "suitable." In *Potts*

v. *Halsted Financial Corp., supra,* 142 Cal.App.3d 727, for example, the plaintiff was injured when he slipped through loose boards in a building under construction on beachfront property. The Court of Appeal reversed summary judgment in favor of the defendant property owner, holding that section 846 did not apply to the property as a matter of law: "Application of the statute here would fail to promote [the] intent of the Legislature. Landowners who have begun to erect private dwelling units have already withdrawn this portion of their land from public recreational access by making it unsuitable for such purposes. It is highly improbable that the Legislature intended to encourage landowners to allow the public access to [such] places . . . or indeed that landowners would ever be likely to permit such a use, whether or not they had been granted immunity." (*Id.* at p. 730.)

With the exception of the matter under review, all of the cases in which property has been found to be "unsuitable" for recreational use have, as in *Potts,* involved construction sites, and many have involved minors. In *Paige* v. *North Oaks Partners, supra,* 134 Cal.App.3d 860, for example, the plaintiff, a minor, was injured when he fell from his bicycle while attempting to jump over an open trench in a construction area. The Court of Appeal reversed summary judgment for the defendant property owner, stating: "In attempting to provide access for the public to open spaces for recreational use, the Legislature could not have intended to encourage owners and building contractors to allow children to play on their temporary construction projects." (*Id.* at p. 863.) The court reached a similar conclusion in *Domingue* v. *Presley of Southern California, supra,* 197 Cal.App.3d 1060, 1063, where the plaintiff, a minor, was injured while riding his bicycle off a six-foot drop in a graded area of property. Although no actual construction had taken place on the lot where the accident occurred and the area had recently been "pastureland," the court nevertheless held that because the property could not be characterized as "undeveloped," recreational use was unsuitable and therefore section 846 immunity was precluded as a matter of law. (*Id.* at p. 1070;[7] see also *Wineinger* v. *Bear Brand Ranch, supra,* 204 Cal.App.3d at p. 1010 [unpaved road in development project unsuitable for recreational use by minor in modified land cruiser].)

 The Court of Appeal in this case also premised its holding on the conclusion that defendant's property was unsuitable for "legitimate recreational use." Although the specific area where plaintiff's accident occurred

[7]Justice George, then sitting on the Court of Appeal, dissented from the majority's conclusion in *Domingue* that the land was unsuitable for recreational use, noting it was undisputed that no construction had taken place during the three-year period between preliminary grading and plaintiff's accident, and nothing had been done to alter the condition of the land at the site of the accident. (197 Cal.App.3d at p. 1072 (dis. opn. of George, J.)

was not developed or even partially developed property, the Court of Appeal nevertheless concluded that defendant "withdrew his property from [recreational] use when he stored his dangerous equipment on it. . . . The Legislature could not have intended to encourage farmers to allow their farm equipment storage areas to be used for recreation." The instant case is thus the first to extend the "suitability" rule beyond the construction site context.

### 5. *Analysis of the Suitability Exception*

The first point to be noted about the "suitability" requirement is its origin; it is a purely judicial construct, without any basis or support in the statutory language. Indeed, as earlier discussed, the text of section 846 is extremely broad; the immunity applies to the "owner of *any* estate or *any* other interest in real property, whether possessory or nonpossessory. . . ." (Italics added.) The Legislature made no distinction between developed and undeveloped property or between urban and rural land, and imposed no requirement that the site be in a "natural" or unaltered state. As we have previously observed, "section 846 is by no means limited to land in its natural condition—it specifically mentions 'structures'—it obviously encompasses improved streets." (*Delta Farms Reclamation Dist.* v. *Superior Court, supra,* 33 Cal.3d at pp. 706-707; see also *Valladares* v. *Stone, supra,* 218 Cal.App.3d at p. 370 ["The Legislature did not limit section 846 to rural as opposed to urban land."].)

Thus, assuming the requisite "interest" in land, the plain language of the statute admits of *no* exceptions, either for property "unsuitable" for recreational use or otherwise.

■ Courts may, of course, disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary legislative intent. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) ■ As noted earlier, several Courts of Appeal have concluded the Legislature could not rationally have intended to immunize owners of property unsuited for recreation, even if in fact the property was used for such a purpose at the time of the accident. Reason and logic do not, however, compel such a conclusion. The Legislature could reasonably determine that a landowner—any landowner—should not in fairness be held liable for injuries sustained by a trespasser from the recreational use of the owner's property. ■■■■■■ The statute, in short, may be read to mean precisely what it says.[8]

One of the first Court of Appeal decisions to consider the scope of section 846 reached this very conclusion. In *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737 [140 Cal.Rptr. 905], the court considered

[8]Because the statutory language is clear and serves a rational purpose, resort to extrinsic sources is unnecessary and uncalled for. " 'When statutory language is thus clear and

an equal protection challenge to section 846 on the basis that it improperly included land "unsuited for recreation." (*Id.* at p. 749.) The Court of Appeal rejected the claim, observing that the statute was not "designed . . . to absolve from the charge of simple negligence only the owners of such properties ordinarily entered by persons seeking recreation [or those] . . . who would be enticed to refrain from fencing or guarding their property. . . . The Legislature probably decided not only that freedom of recreation should be encouraged, but also that it is *unfair* to permit claims for negligence in favor of persons who choose to enter the lands of others for the described activities." (*Ibid.*, italics added.)

A graded housing tract is certainly not designed for recreational purposes, but when it is *used* as such, within the meaning of section 846, it is reasonable to put the user at risk. The public policy balance achieved by the statute is clear: landowners are broadly encouraged to allow access to their property; recreationists who take advantage of this access waive their right to sue for ordinary negligence. The determination as to whether the land is "suitable" for recreation is placed on the user, not the courts. As the court observed in *Stout* v. *U.S.* (D. Hawaii 1987) 696 F.Supp. 538, 539 (holding a nearly identical Hawaii statute to be applicable to "a debris and litter ridden piece of woods on a military base"): "The statute does not create a qualitative factor as to what land can be deemed recreational and what cannot. The statute encompasses any land that is *used* for recreation, rather than what some court may determine is recreational land." (*Ibid.*, original italics.)

Our conclusion that the Legislature did not intend to confine section 846 immunity to land "suitable" for recreational use is also supported by practical considerations. As the instant case illustrates, the concept of "suitability" is elusive and unpredictable. As a purely judicial construct it has engendered disparate application. One court, for example, focused on the acute need for recreational areas in urban settings to conclude that a vacant, weed-covered lot adjacent to a residential center was "suitable" for recreation. (*Valladares* v. *Stone, supra*, 218 Cal.App.3d at pp. 369-370.) Another has implied that section 846 immunity is intended primarily for large tracts of rural or semirural land. (*Paige* v. *North Oaks Partners, supra*, 134 Cal.App.3d at p.

unambiguous there is no need for construction, and *courts should not indulge in it.*' " (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 800 [268 Cal.Rptr. 753, 789 P.2d 934], italics in *Delaney*.) We have, nevertheless, reviewed the sparse legislative history of section 846 and find it inconclusive. A letter from the bill's Senate sponsor to the Governor urging favorable consideration suggests that it would encourage owners who might otherwise fear liability to grant access to their property. This does not, however, demonstrate that the statute was directed exclusively to such owners. Moreover, a possible inference from a single extrinsic source "is an insufficient basis on which to ignore the unrestricted and unambiguous language of the measure itself." (*Id.* at p. 803.)

865.) Some have suggested that the "suitability" exception is limited to active construction sites. (*Domingue* v. *Presley of Southern California, supra,* 197 Cal.App.3d at p. 1070; *Valladares* v. *Stone, supra,* 218 Cal.App.3d at pp. 370-371; *Colvin* v. *Southern Cal. Edison Co., supra,* 194 Cal.App.3d at p. 1312.) Here, however, undisputably agricultural property was ruled unsuitable, suggesting that immunity may turn not only on the existence of development, but on other, unspecified criteria such as the presence of old equipment. "[T]he tendency of the law," Holmes said, "must always be to narrow the field of uncertainty." (Holmes, The Common Law (1881) p. 127.) The "suitability" exception expands it.

Even assuming that landowners are able generally to assess their properties against this uncertain standard, however, they are still not safe. Some properties may be appropriate for particular recreational activities (e.g., hang gliding) and inappropriate for others (bicycling, for example). Rather than permit access to some users, the prudent owner is more likely to deny access to all. Thus, the "suitability" exception can only thwart the laudable goal of inducing owners to make their properties available for recreation.

The rule has also resulted in the perverse anomaly that landowners who make the most effort to safeguard their property are the least likely to benefit from the statute. In *Wineinger* v. *Bear Brand Ranch, supra,* 204 Cal.App.3d 1003, the Court of Appeal denied section 846 immunity to the owner of a housing tract under development on the ground that the owner had attempted to restrict access to the property by erecting barricades, "no trespassing" and "road closed" signs. Notwithstanding the owner's efforts, the plaintiff and several friends drove a converted land cruiser onto the property and over a cliff. The *Wineinger* court reasoned that by its attempt to restrict access the owner had evidenced an intent to "withdraw" the property from recreational use, thus acknowledging its unfitness for recreation and waiving any claim to the statutory immunity. (*Id.* at pp. 1008-1010; accord, *Myers* v. *Atchison, Topeka & Santa Fe Railway Co., supra,* 224 Cal.App.3d at pp. 759, 761.) The injustice of such a result is evident. The statute reasonably applies to lands that are fenced as readily as those that are open.

The dissent's arguments to the contrary do not bear scrutiny. It is claimed that by amending section 846 to include additional activities within the meaning of "recreational purpose," while failing to overrule the "suitability" rule adopted by the Courts of Appeal, the Legislature impliedly adopted the lower courts' construction. The argument overlooks the fact that at least one court effectively declined to engraft a "suitability" exception on the statute. (*Lostritto* v. *Southern Pac. Transportation Co., supra,* 73 Cal.App.3d 737.) ■ Moreover, as we have repeatedly observed, " ' "Legislative silence after a court has construed a statute gives rise at most to an arguable

inference of acquiescence or passive approval . . . . But something more than mere silence is required before that acquiescence is elevated into a species of implied legislation . . . ." ' [Citations.] In the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry. '[L]egislative inaction is " 'a weak reed upon which to lean.' " ' (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873]; accord, *People* v. *Escobar* (1992) 3 Cal.4th 740, 751 [12 Cal.Rptr.2d 586, 837 P.2d 1100]; *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300-301 [250 Cal.Rptr. 116, 758 P.2d 58]; *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 923 [221 Cal.Rptr. 575, 710 P.2d 375].)

▮▮▮ A judicially created suitability exception is also necessary, the dissent argues, because the Legislature could not have intended to immunize the owner of a construction site from suit by children coming to play on the property, while leaving the developer unprotected from suit by a thief injured on the same site while stealing lumber. The same disparity of treatment would exist, however, on property deemed "suitable" for recreational use. Moreover, the claimed incongruity is largely illusory, as Civil Code section 847 immunizes landowners against suits by most trespassing felons. In any event, the fact that the Legislature has extended a somewhat broader immunity to the property owner against suits by recreational users than felons (Civ. Code, § 847) does not invalidate the statutory scheme. Although we may question the Legislature's priorities, we may not—absent clear evidence of a contrary intent—thwart its plainly expressed judgment.

In sum, we conclude that the so-called "suitability" exception to section 846 is not compelled by law or logic. On the contrary, assuming, as we must, that the Legislature chose its words carefully, the broad language of the statute suggests that the Legislature consciously eschewed any restrictions on the property subject to the statute in order to provide clear guidance to landowners, to encourage access to recreationists, and to fairly balance the interests of both. One who avails oneself of the opportunity to enjoy access to the land of another for one of the recreational activities within the statute may not be heard to complain that the property was inappropriate for the purpose. The Court of Appeal erred, therefore, in holding defendant's property to be outside the scope of section 846.[9]

---

[9]Although a number of other jurisdictions have limited their respective recreational immunity statutes to undeveloped or rural lands, there are several distinguishing factors. In some states the statutes themselves contain language limiting their geographic reach. Washington's immunity provision, for example, applies exclusively to "agricultural or forest lands or water

CONCLUSION

In enacting section 846, the Legislature plainly extended recreational use immunity to a broad class of land owners. It did not limit the statute to agricultural or rural land, to land in an undeveloped or natural condition, or to land otherwise "suitable" for recreation. We may question the Legislature's wisdom in this regard, but we may not thwart its will. The judgment of the Court of Appeal, accordingly, is reversed.

Lucas, C. J., Baxter, J., and George, J., concurred.

**GEORGE, J.**—I concur in the majority opinion because the broad language employed by the Legislature in drafting Civil Code section 846 compels the conclusion that plaintiff, at the time he was injured, was using defendant's property for a "recreational purpose" within the meaning of that statute. But I agree with the observation, made in the dissenting opinion, that it is incongruous to immunize a landowner from liability for injuries sustained by a child attracted to play on dangerous equipment located on the property while permitting a suit to be brought by an adult who is injured by the same dangerous equipment while on the property for a nonrecreational, illegal purpose (other than to commit one of the felonies listed in Civil Code section 847). This incongruity results, however, not from the holding of the majority opinion, but from the statute itself.

The dissent seeks to avoid this paradox by concluding that the Legislature, by implication, has adopted the "suitability exception" recognized by a number of decisions of the Courts of Appeal. But even if this court were to

areas or channels and rural lands adjacent to such areas . . . ." (Wash. Rev. Code § 4.24.210 (1991); see also Iowa Code Ann. § 111C.3 (West 1991); Or. Rev. Stat. § 105.655(2) (1991); S.D. Codified Laws Ann. § 20-9-5 (1992).) In other states, the limitation has come about through judicial construction. The seminal California case, *Paige* v. *North Oaks Partners, supra,* 134 Cal.App.3d 860, relied on two New Jersey decisions holding that state's recreational statute applied only to undeveloped rural or semirural land. (*Harrison* v. *Middlesex Water Co.* (1979) 80 N.J. 910 [403 A.2d 910]; *Boileau* v. *DeCecco* (1974) 65 N.J. 234 [323 A.2d 449].) The New Jersey court emphasized, however, that its immunity provision was based on a predecessor statute expressly limited to "agricultural lands or woodlands," and observed that "there is nothing to suggest . . . that the [revised statute] intended to extend immunity to all property without limit." (*Harrison* v. *Middlesex Water Co., supra,* 403 A.2d at pp. 913, 914.) Other states have relied on express statutory language, derived from the model act, limiting the reach of the statutory immunity to "land . . . available to the public for recreational purposes." (See, e.g., *Gibson* v. *Keith* (Del. 1985) 492 A.2d 241, 246; *Keelen* v. *State, Dept. of Culture, Recreation* (La. 1985) 463 So.2d 1287, 1290; *Cassio* v. *Creighton University* (1989) 233 Neb. 160 [446 N.W.2d 704, 708-710]; *Rivera* v. *Philadelphia Theological Seminary* (1986) 510 Pa. 1 [507 A.2d 1, 7].) As noted earlier, although one purpose of section 846 is to encourage access to recreational lands, it is not expressly or necessarily limited to such property.

assume that the Legislature's silence connotes acquiescent adoption of the judicially created rule exempting the owner of property unsuitable for recreational purposes from the immunity conferred by Civil Code section 846, the disparate treatment accorded the child injured in play and the adult injured while engaged in criminal activity would continue to exist. For example, a child who enters property deemed suitable for recreation and is injured falling from an apple tree would be precluded from recovering for his or her injuries, but section 846 would not apply to a thief who enters such property to steal apples and is injured in the same manner.

The dissent additionally would avoid the majority's holding that climbing upon farm equipment is a "recreational purpose" by limiting the reach of Civil Code section 846 to "recreational uses similar to those enumerated in the definitional paragraph in the statute. [Citation.]" (Dis. opn., *post*, at p. 1114.) The statute, however, expressly immunizes landowners from liability for injuries to persons who enter or use property for "*any* recreational purpose." (Civ. Code, § 846, italics added.) Although a list of examples follows this general language, the phrase "recreational purpose" is not limited to the listed activities, but "includes" them. The examples themselves are so diverse, and many are stated in such vague and general terms, that no meaningful restriction of the phrase "recreational purpose" is possible in this statutory context.

The unfortunate result in this case is mandated by the manner in which Civil Code section 846 has been drafted. We may not rewrite the statute; that power is reserved to the Legislature. I therefore concur in the opinion of this court reversing the judgment of the Court of Appeal.

**PANELLI, J.,** Dissenting.—There are three reasons why the majority's interpretation of Civil Code section 846[1] is erroneous. First, it fails to recognize that the Legislature has acquiesced in the long-standing rule requiring that the property in question be "suitable" for a recreational purpose. Second, it does not further the legislative intent underlying the statute. Third, it misconstrues the statutory phrase "any recreational purpose" to include climbing on farm equipment and, in so doing, violates basic principles of statutory construction. For these reasons, I dissent.

I.

First, it is irrefutable that the Legislature has acquiesced in the many judicial decisions construing section 846 to include a suitability exception. (See *Paige* v. *North Oaks Partners* (1982) 134 Cal.App.3d 860 [184

---

[1]All further statutory references are to the Civil Code unless otherwise indicated.

Cal.Rptr. 867]; *Potts* v. *Halsted Financial Corp.* (1983) 142 Cal.App.3d 727 [191 Cal.Rptr. 160]; *Nazar* v. *Rodeffer* (1986) 184 Cal.App.3d 546 [229 Cal.Rptr. 209]; *Charpentier* v. *Von Geldern* (1987) 191 Cal.App.3d 101 [236 Cal.Rptr. 233]; *Domingue* v. *Presley of Southern California* (1988) 197 Cal.App.3d 1060 [243 Cal.Rptr. 312]; *Wineinger* v. *Bear Brand Ranch* (1988) 204 Cal.App.3d 1003 [251 Cal.Rptr. 681]; *Valladares* v. *Stone* (1990) 218 Cal.App.3d 362 [267 Cal.Rptr. 57]; *Myers* v. *Atchison, Topeka & Sante Fe Railway Co.* (1990) 224 Cal.App.3d 752 [274 Cal.Rptr. 122].)

Under the doctrine of legislative acquiescence, " 'when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction.' " (*Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 219 [246 Cal.Rptr. 733, 753 P.2d 689], quoting *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161], cert. denied 459 U.S. 858 [74 L.Ed.2d 111, 103 S.Ct. 129]; accord, *People* v. *Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].) As the majority recognizes, the suitability exception has been applied in an unbroken line of decisions in this state since it was first recognized in 1982. (Maj. opn., *ante*, at p. 1103.)

By 1988 the suitability exception was well established. (*Paige* v. *North Oaks Partners, supra,* 134 Cal.App.3d 860; *Potts* v. *Halsted Financial Corp., supra,* 142 Cal.App.3d 727; *Nazar* v. *Rodeffer, supra,* 184 Cal.App.3d 546; *Charpentier* v. *Von Geldern, supra,* 191 Cal.App.3d 101; *Domingue* v. *Presley of Southern California, supra,* 197 Cal.App.3d 1060; *Wineinger* v. *Bear Brand Ranch, supra,* 204 Cal.App.3d 1003.) In that year, the Legislature amended section 846 to add "hang gliding" to the list of activities enumerated in the statute. (Stats. 1988, ch. 129, § 1, p. 507.) Since the suitability exception serves to limit the scope of the immunity provided by the statute, it would have been logical for the Legislature to abrogate this exception if it wished to do so at the same time it was expanding the immunity provided by the statute to include a new recreational activity. The Legislature, however, did not modify any of the other language of this short, unsegmented statute. Therefore, a strong presumption arises that the Legislature has acquiesced in the judicial interpretation.

By way of contrast, I observe that the Legislature previously took prompt action to amend the statute in light of merely two decisions of the Courts of Appeal that limited section 846 immunity to holders of possessory interests in real property. (See *Darr* v. *Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895 [157 Cal.Rptr. 90]; *O'Shea* v. *Claude C. Wood Co.* (1979) 97 Cal.App.3d

903 [159 Cal.Rptr. 125]; *Hubbard* v. *Brown* (1990) 50 Cal.3d 189, 194-195 [266 Cal.Rptr. 491, 785 P.2d 1183] [discussing history of 1980 amendments].) Surely, in light of the unbroken line of cases recognizing the suitability exception, the Legislature would have taken similar action sometime during the decade since the exception was recognized if the appellate courts indeed had consistently misconstrued its intent.

## II.

The Legislature's acquiescence in the suitability exception is not surprising, since the exception appears to be consistent with the Legislature's intent. Unlike the majority, I do not believe that the Legislature intended to severely curtail the protections provided to its citizens by the tort laws of this state (§ 1714; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]) without achieving a significant public benefit in return.

As the majority recognizes, section 846 "provides an exception from the general rule that a private landowner owes a duty of reasonable care to any person coming upon the land. [Citations.]" (Maj. opn., *ante,* at p. 1099.) The legislative purpose in providing this exception was to encourage private property owners to keep their property accessible and open free of charge to the public for recreational use. (E.g., *Hubbard* v. *Brown, supra,* 50 Cal.3d at p. 193; *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707-708 [190 Cal.Rptr. 494, 660 P.2d 1168], cert. denied 464 U.S. 915 [78 L.Ed.2d 257, 104 S.Ct. 277]; *Valladares* v. *Stone, supra,* 218 Cal.App.3d at p. 367.) Thus, section 846 represents a trade-off of the protections provided by the tort laws for increased recreational opportunities. The public benefit contemplated by this trade-off, however, does not actually accrue unless the land that is made available for public use is suitable for a recreational purpose.

The majority's interpretation of section 846 permits the exception created by that section to swallow the general duty of care in practically all nonbusiness contexts, thereby upsetting the balance of the trade-off contemplated by the Legislature. The result is a blanket immunity that is unnecessary to achieve any significant public benefit.

The majority claims that its interpretation of section 846 is necessary to further the legislative intent for two reasons. First, the majority reasons that the Legislature rationally could have determined that a suitability exception would breed uncertainty in the application of immunity thereby discouraging landowners from allowing the public the access to their lands that the statute

was enacted to promote. (Maj. opn., *ante*, at pp. 1106-1108.) This contention is easily addressed. Even assuming the majority is correct that adopting the suitability exception could discourage some landowners from making their lands available to the public for recreational purposes, this effect is likely to be most pronounced among landowners whose property is unsuitable or of marginal suitability for public recreation. Only a landowner who is uncertain whether his property is suitable for recreation will have an incentive to behave as the majority suggests by closing his property. Yet, in such a case, very little public benefit, if any, will be lost. An interpretation of the statute leading to closure of marginal recreational lands is more consistent with the legislative trade-off between increased recreational opportunities and diminished legal protections for persons who choose to take advantage of such opportunities than the blanket immunity resulting from the majority's interpretation.

Second, the majority reasons that the Legislature rationally could have determined that it was unfair to permit claims of negligence by persons choosing to enter private property for recreational purposes. (Maj. opn., *ante*, at pp. 1105-1106.)[2] This contention also is easily addressed. Initially, nothing in the statutory language or the sparse legislative history of this statute supports the majority's speculation on this point. (*Potts* v. *Halsted Financial Corp.*, *supra*, 142 Cal.App.3d at p. 731.) Moreover, I cannot believe that, if the Legislature indeed had been concerned with achieving fairness or rationality in premises liability torts, rather than simply attempting to ensure the availability of recreational lands for the public, the statutory immunity in question would have been phrased in terms of recreation. Borrowing a persuasive example from one of our lower courts, I cannot conclude that, if the legislative intent was as the majority suggests, the Legislature would have chosen to immunize a developer from suits by children coming to play on its construction site, but leave the developer unprotected from suits by adults who enter the property for nonrecreational, illegal purposes (other than to commit one of the felonies listed in section 847), such as to steal a piece of lumber lying on the ground. (142 Cal.App.3d at p. 731.)

For these reasons, I disagree with the majority's decision to abrogate the suitability exception. In my view, section 846 is properly interpreted to include the suitability exception long recognized by our Courts of Appeal.

### III.

Finally, the majority further errs in concluding that playing on farm equipment is a recreational activity triggering the immunity provided by the

---

[2]This portion of the majority's analysis is taken from the much criticized decision in *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 749 [140 Cal.Rptr. 905].

statute. The majority reaches this result by concluding that the statutory phrase "any recreational purpose" should be read without regard to the list of activities provided in the statute. (Maj. opn., *ante*, at pp. 1100-1102.) The majority's conclusion violates accepted principles of statutory construction.

First, the majority fails to heed the principle that the courts must strive to give significance to every word, phrase and sentence employed by the Legislature. (E.g., *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323]; *Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 484 [208 Cal.Rptr. 724, 691 P.2d 272]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The majority's interpretation of the statute renders superfluous the paragraph in the statute listing activities included as recreational for purposes of the statute.

That the statutory list of activities was intended by the Legislature to give meaning to the phrase "any recreational purpose" is confirmed by subsequent legislative history. The phrase "any recreational purpose" was added as part of comprehensive amendments to the statute enacted in 1978. (Stats. 1978, ch. 86, § 1, p. 221.) In 1979, the Legislature expanded the list of activities included within the definition of "recreational purpose" to include "sport parachuting." (Stats. 1979, ch. 150, § 1, p. 347.) In 1988, the Legislature again expanded the definitional list by adding "hang gliding." (Stats. 1988, ch. 129, § 1, p. 507.) These two amendments to the statute would have been unnecessary if the Legislature had intended the phrase "*any* recreational purpose" to be read without regard to the definitional list provided in the statute.

Since the list was intended to provide meaning to the phrase "any recreational purpose," application of the principle of *ejusdem generis* is appropriate. This principle provides that where specific words follow general words in a statute or vice versa, "the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160 [278 Cal.Rptr. 614, 805 P.2d 873], internal quotation marks omitted; accord *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 50 [276 Cal.Rptr. 114, 801 P.2d 357].) Thus, the phrase "any recreational activity" must be interpreted to include recreational uses similar to those enumerated in the definitional paragraph in the statute. (*Valladares* v. *Stone, supra,* 218 Cal.App.3d at p. 369.)

Applying this principle to the facts at hand, I conclude that climbing upon or being a spectator to climbing upon farm equipment does not resemble any

of the recreational activities listed in the statute as those activities are commonly understood. Therefore, I conclude that the statutory immunity provided by section 846 does not shield the property owner in this case.

Citing *Valladares* v. *Stone, supra,* 218 Cal.App.3d at page 369, the majority contends that climbing upon farm equipment is indistinguishable from climbing a tree or a cliff. (Maj. opn., *ante,* at p. 1101.) The majority errs both in practical terms and in terms of statutory construction. First, in our society, the climbing of trees is a common childhood experience remembered by most with great nostalgia (see *Valladares* v. *Stone, supra,* 218 Cal.App.3d at p. 369), and the scaling of cliffs is a considered a serious sport; it would be difficult, however, to find someone who considered playing on farm equipment to be anything other than dangerous tomfoolery that should not be encouraged. Second, as recognized by the *Valladares* court, the activities specified by the majority are a form of "nature contacting," which is one of the activities specifically enumerated in the statute. (*Valladares* v. *Stone, supra,* 218 Cal.App.3d at p. 369.) I, therefore, find the majority's analogy unpersuasive.

## IV.

For these reasons stated herein, I conclude that the immunity provided by section 846 is not applicable to the case at hand. I would affirm the judgment of the Court of Appeal.

Mosk, J., and Kennard, J., concurred.