# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-2187

———————

| | |
|---|---|
| Irene Cudworth; Randy Cudworth,      * | |
|      * | |
| Appellants,      * | |
|      * | |
| v.      * | Appeal from the United States |
|      * | District Court for the |
| Midcontinent Communications;      * | District of North Dakota. |
| Midcontinent Communications Investor, * | |
| LLC; Midco Communications, Inc.;      * | |
| Midcontinent Media, Inc.; Midco of      * | |
| South Dakota, Inc.,      * | |
|      * | |
| Appellees.      * | |

———————

Submitted: March 10, 2004
Filed: August 23, 2004

———————

Before WOLLMAN, HANSEN, and COLLOTON, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Randy Cudworth was pulled from his snowmobile and rendered a quadriplegic when he collided with a rope barrier strung across property owned by the appellees, whom we will refer to collectively as "Midcontinent." In the ensuing lawsuit by

Cudworth and his wife, the district court[1] granted summary judgment in Midcontinent's favor, concluding that North Dakota's recreational use immunity statute absolved Midcontinent of liability and that the Cudworths' remaining claims failed as a matter of law. The Cudworths appeal. We affirm.

## I.

The Midcontinent property where Cudworth was injured is a largely open, six-acre field located directly north of Langdon, North Dakota, and south of a state-groomed snowmobile trail.[2] Two residential streets, 15th and 16th, run north from Langdon toward the property. 15th Street borders the property to the west and 16th street terminates at its southern boundary. A dirt path (the "prairie road") connects the end of 16th street with 15th street. Although the prairie road is located on Midcontinent's land, Langdon residents and the City itself have used it for many years. In addition, residents have used Midcontinent's field as a site on which to operate their all-terrain vehicles during the summer months and as an access route to established snowmobile trails during the winter months.

In the summer of 2000, Midcontinent became upset because garbage was being dumped on the prairie road and because traffic across the road, including that by City-owned vehicles, was causing ruts. To remedy the situation, the City hauled in dirt, graded the ruts, and seeded portions of the area with grass. Midcontinent employee Jerry Reiser then erected barriers at each end of the prairie road. The eastern barrier, the point at which Cudworth was injured, consisted of 200 feet of quarter-inch diameter yellow nylon rope tied between metal stakes and wooden cable spools, each

[1]The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

[2]The property houses an outbuilding, some satellite dishes, and a communications tower with guy wires anchored at various points in the field.

of which was affixed with a "keep out," "private property," or "no trespassing" sign. The rope originated on the southwest corner of 16th street, ran northeast across the end of the prairie road, and east beyond the end of 16th street into Midcontinent's field. Reiser, who knew that snowmobilers used the property during winter, erected the barrier to prevent damage to the newly seeded grass, but the barrier remained even after snow had started falling.

On February 23, 2001, Cudworth drove up 16th street on his snowmobile towards Midcontinent's field, destined for the trails to the north. He had not used a snowmobile in the area before and was unaware of the barrier, which was by now partially obscured in a bank of plowed snow at the end of 16th street. Although the other persons in Cudworth's snowmobiling party observed the barrier and avoided it, Cudworth did not see the rope and collided with it as he rounded the east side of the snowbank.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as did the district court. See Dennen v. City of Duluth, 350 F.3d 786 (8th Cir. 2003) (citation omitted). North Dakota law controls, and to the extent we confront questions that North Dakota's courts have not yet answered, we endeavor to predict the course of the State's highest court. Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff, 354 F.3d 945, 952 (8th Cir. 2004) (predicting Arkansas law).

## A. Applicability of the Recreational Use Immunity Statute

The relevant portions of North Dakota's Recreational Use Immunity statute, N.D. Cent. Code § 53-08-01 et seq., are as follows:

**53-08-02. Duty of care of landowner.** Subject to the provisions of section 53-08-05, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

**53-08-03. Not invitee or licensee of landowner.** Subject to the provisions of section 53-08-05, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

1. Extend any assurance that the premises are safe for any purpose;
2. Confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed; or
3. Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

**53-08-04. Leased land to state or political subdivisions.** Unless otherwise agreed in writing, an owner of land leased to the state or its political subdivisions for recreational purposes owes no duty of care to keep that land safe for entry or use by others or to give warning to persons entering or going upon such land of any hazardous conditions, uses, structures, or activities thereon. An owner who leases land to the state or its political subdivisions for recreational purposes does not by giving such lease:

1. Extend any assurance to any person using the land that the premises are safe for any purpose;
2. Confer upon such persons the legal status of an invitee or licensee to whom a duty of care is owed; or
3. Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of a person who enters upon the leased land.

The provisions of this section apply whether the person entering upon the leased land is an invitee, licensee, trespasser, or otherwise.

**53-08-05**. **Failure to warn against dangerous conditions – Charge to enter.** Nothing in this chapter limits in any way any liability which otherwise exists for:

1. Willful and malicious failure to guard or warn against a dangerous condition, use, structure, or activity; or
2. Injury suffered in any case when the owner of land charges the person or persons who enter or go on the land other than the amount, if any, paid to the owner of the land by the state.

The Cudworths first argue that the recreational use immunity statute does not apply because a prerequisite to statutory immunity is the landowner's "opening" of property for public recreational use, something which the Cudworths contend Midcontinent did not do when it roped off and posted the prairie road. State courts interpreting similar legislation are divided over this question,[3] but the district court ultimately rejected "permissive use" as a statutory prerequisite to immunity in North Dakota.

As in other states, the acknowledged purpose of North Dakota's recreational use immunity statute is to encourage landowners to open land for recreational use by the public. See Hovland v. City of Grand Forks, 563 N.W.2d 384, 385 (N.D. 1997);

---

[3]North Dakota's recreational use immunity statute is descended from model legislation adopted by a number of states in the 1960's. Of those states, some rely on plain statutory language to conclude that immunity applies regardless of permissive public use, see e.g., Ornealas v. Randolph, 847 P.2d 560, 568-69 (Ca. 1993); Larini v. Biomass Industries, Inc., 918 F.2d 1046, 1049-50 (2d Cir. 1990) (applying New York law); Peterson v. Schwertley, 460 N.W.2d 469, 471 (Iowa 1990); Friedman v. Grand Cent. Sanitation, Inc., 571 A.2d 373, 376 (Pa. 1990), while others hold that statutory immunity is conferred to only those landowners who open their land for public use. See, e.g., Hall v. Henn, 802 N.E.2d 797, 800 (Ill. 2003); Perrine v. Kennecott Mining Co., 911 P.2d 1290, 1293 (Utah 1996); Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 981 (10th Cir. 1993) (applying Kansas law); Coursey v. Westvaco Corp., 790 S.W.2d 229, 232 (Ky. 1990); LePoidevin v. Wilson, 330 N.W.2d 555, 563 (Wis. 1983) (interpreting now-repealed Wisconsin statute).

Olson v. Bismarck Parks & Rec. Dist., 642 N.W.2d 864, 870 (N.D. 2002). The statute does not, however, explicitly require that landowners open property to public use before receiving immunity, nor does it specify that immunity applies only where entrants are invitees or licensees.[4] Cf. Olson, 642 N.W.2d at 870 (Noting, for purposes of equal protection analysis, that "[t]he recreational use immunity statutes create two classes of persons and treat them differently: nonpaying recreational users of another's land and all other persons using the land of another."). Section 53-08-02 plainly states that landowners owe no duty to recreational users of land, and subsequent provisions, particularly sections 53-08-03 and 53-08-04, clarify immunity in those circumstances in which permitting recreational use might have otherwise created a duty at common law. We conclude that the most logical reading of the statute is to "view [the first provision] as a general grant of immunity and [the later provisions] as an extension of immunity to cover the special circumstances long recognized in the case law." Gallo v. Yamaha Motor Corp., 526 A.2d 359, 363 (Pa. Super. Ct. 1987) (construing similar Pennsylvania language).

We cannot credit the Cudworths' argument regarding statutory purpose because it requires that we either ignore section 53-08-02 as redundant (because section 53-08-03 immunizes landowners who "invite" or "permit" recreational use of their land), or give a restrictive reading to section 53-08-02, neither of which we are at liberty to do. Douville v. Pembina County Water Res. Dist., 612 N.W.2d 270, 274 (N.D. 2000) (noting "we will not disregard the letter of the statute under the pretext of pursuing its spirit, because the legislative intent is presumed clear from the face of the statute."). Furthermore, we do not believe adherence to the letter of the statute necessarily undermines its spirit. The legislature could have reasonably concluded

---

[4]At common law, the status of the entrant as invitee, licensee, or trespasser was often crucial to determinations of landowner duties. See O'Leary v. Coenen, 251 N.W.2d 746, 751 (N.D. 1977). North Dakota has abolished the common law distinction between licensee and invitee and the elaborate permutations of each, but still recognizes that lesser duties are owed to trespassers. Id.

-6-

that immunity for all landowners nonetheless eliminates the primary obstacle to opening property for recreational use – fear of liability – and therefore encourages landowners to either keep property open for recreational purposes or to open property that was formerly off-limits. In light of the statute, landowners no longer have an incentive to exclude recreational users, a point which the North Dakota Supreme Court recently recognized when considering the statute's constitutionality: "It is logical for the Legislature to conclude that a limitation on a landowner's liability exposure to nonpaying recreational users has an influence on the landowner's decision not to exclude recreational users from the land." Olson, 642 N.W.2d at 870; Peterson v. Schwertley, 460 N.W.2d 469, 471 (Iowa 1990) (noting that "[i]f the abrogation of the landowner's duty is so limited [to permissive use], landowners remain vulnerable to claims by injured invitees and licensees who choose to dispute the granting of the license or invitation.").

We recognize that the North Dakota Supreme Court recently observed that "limited tort immunity is the quid pro quo for the noncommercial opening of property to the public for recreational use." Olson, 642 N.W.2d at 870. We do not read that statement as an indication that that court would interpret the statute as requiring as a condition of immunity an affirmative act by the landowner to open the land to recreational use. Cf. Gallo, 526 A.2d at 363 (Interpreting nearly identical Pennsylvania language and noting that "[n]othing in the plain language of the Act imposes this kind of strict quid pro quo."). We instead read the reference to "quid pro quo" as an expression of the general societal trade-off the statute makes: potential encouragement of recreational access at the expense of the elimination of recreational-injury liability. We therefore agree with the district court that, if presented with the question, the North Dakota Supreme Court would hold that the recreational use immunity statute applies regardless of a landowner's decision to close some or all of its property and irrespective of an entrant's particular common-law status as invitee, licensee, or trespasser.

## B. Exception for Willful and Malicious Failure to Warn

Although the statute applies regardless of permissive use, it does not protect landowners who engage in a "willful and malicious failure to guard or warn against a dangerous condition, use, structure, or activity" on premises. N.D. Cent. Code. § 53-08-05. The parties contest the application of this exception and, more specifically, the meaning of "malicious," a term which the statute does not define. The district court concluded that "malicious" conduct requires proof of "actual malice" or "evil intent," and it found such evidence lacking. The Cudworths contend that the district court's definition is too narrow, pointing out that the term also encompasses "presumed malice," which is said to exist "where the defendant's conduct amounts to a reckless disregard of the rights of others." Slaubaugh v. Slaubaugh, 466 N.W.2d 573, 581 (N.D. 1991).

Absent legislative definitions or a clearly contrary legislative intent, neither of which exists here, we give statutory terms their "plain, ordinary, and commonly understood meaning." Rydberg v. Rydberg, 678 N.W.2d 534, 537 (N.D. 2004). The term "malicious" typically means "given to, marked by, or arising from malice," and "malice" most commonly connotes an "intention or desire to harm another . . . ." Webster's Third New Int'l Dictionary 1367 (1981); cf. Oxford English Dictionary 264 (2d Ed. 1989) ("4. The desire to injure another person; active ill will or hatred."); Black's Law Dictionary 968 (7th Ed. 1999) ("1. the intent, without justification or excuse, to commit a wrongful act."). The Cudworths contend that this commonly accepted definition ignores malice as a legal term of art. We do not agree. In contexts such as defamation, the malice necessary to defeat qualified privilege depends on scienter and requires proof of ill-will or wrongful motive, see Soentgen v. Quain & Ramstad Clinic, P.C., 467 N.W.2d 73, 79 (N.D. 1991), and in others, like criminal law, malice is traditionally understood as "that state of mind or act when one willfully does that which he knows will injure another person or property . . . ." Territory v. Egan, 13 N.W. 568, 571 (Dakota 1882). Indeed, North Dakota's statute

on conclusive presumptions, which says nothing of "reckless disregard," allows inference of "[a] malicious and guilty intent from the deliberate commission of an unlawful act for the purpose of injuring another." N.D. Cent. Code § 31-11-02.

It is true that North Dakota has recognized a distinction between actual and presumed malice in cases interpreting now-repealed statutes specifically authorizing punitive damages upon proof of "malice, actual or presumed," see e.g., Dahlen v. Landis, 314 N.W.2d 63, 68 (N.D. 1981), but we think the distinction is unpersuasive in the context of the recreational use immunity statute. Section 53-08-05, which the North Dakota Legislature amended in 1993 to read in the conjunctive – "willful and malicious" – does not distinguish between types of malicious conduct. Elsewhere, the Legislature has excised narrow definitions of malice from the law by legislative act. For example, in State v. Minor, 117 N.W. 528, 528-29 (N.D. 1908), the North Dakota Supreme Court concluded that the crime of malicious mischief required evidence of "actual ill-will or revenge," a requirement which the Legislature subsequently eliminated by replacing "malicious mischief" with "criminal mischief" and providing that the requisite mental state for conviction was recklessness. See State v. Chyle, 297 N.W.2d 409, 415-16 (N.D. 1980); see also N.D. Cent. Code. § 32-12.1-04 (allowing for individual liability of public employees only in cases of "reckless or grossly negligent conduct, or willful or wanton misconduct."). If the Legislature had intended to allow liability for presumed malice or reckless disregard in the recreational use immunity statute, it could have easily said so during the amendatory process.[5] It did not do so, however, and we therefore conclude that the term "malicious" does not encompass the definitions urged by the Cudworths.

---

[5]The Cudworths suggest that this same logic prevents construing "malicious" to mean "actual malice" since the legislature has expressly used "actual malice" in the punitive damages statute, but we think the peculiar historical language of the punitive damages statute provides a better explanation. The Legislature simply eliminated "presumed malice," a decision having little impact on default definitions of "malicious" or "malice" elsewhere.

-9-

We further agree with the district court that summary judgment was appropriate. There is no evidence from which a reasonable jury could find that Midcontinent's barrier was constructed or left in place to injure snowmobilers. The barrier was constructed months before the winter season for an unrelated purpose, and Midcontinent had no notice that snowmobilers were having difficulty observing it.[6] Moreover, the nature of the barrier itself is not sufficient for a jury to infer "willful and malicious" conduct, as such a reading would include every landowner who uses a rope, wire, or other fencing material to restrict access to portions of private property adjacent to snowmobiling trails, thereby allowing the exception to entirely swallow the general rule. Cf. Stokka v. Cass County Elec. Coop., 373 N.W.2d 911, 916 (N.D. 1985) (VandeWalle, J., concurring: "[I]f we were to apply the usual definitions of 'willful or malicious' to this matter, we would necessarily have to conclude that there is nothing in the record to reflect that [the defendant] acted 'willfully' or 'maliciously,' as those terms are usually understood . . . .").

## C. Acquisition of Prairie Road by Prescription, Acquiescence

The Cudworths next claim that the recreational use immunity statute is not applicable because the public acquired the right to use the prairie road by prescription and acquiescence, rendering the erection of the rope barrier illegal. We conclude that this contention is irrelevant. Proof of adverse possession establishes ownership and,

---

[6]Midcontinent's lack of knowledge renders the Cudworths' claim doubtful even under a "reckless disregard" standard, as we believe the case law nominally requires that the defendant know of a dangerous condition or structure before he may act "willfully" or with "reckless disregard." See Stokka v. Cass County Elec. Coop., 373 N.W.2d 911, 916 (N.D. 1985) (noting the defendant's knowledge that its guy wires posed a risk to snowmobilers); Slaugbaugh, 466 N.W.2d at 581 (noting testimony that county had been specifically advised to place warning signs at dangerous intersection). The Cudworths' evidence at best shows Midcontinent was neglectful in not removing the barrier and that it should have known that the barrier posed a risk. This is proof of negligence, not willfulness or reckless disregard.

-10-

on the Cudworths' argument, would establish only that Midcontinent did not own the prairie road. Cudworth was not injured on the prairie road, however, but on Midcontinent's field to the east. Thus, even if the public did own the prairie road, rendering illegal that portion of the barrier across it, <u>see</u> N. D. Cent. Code. § 24-12-02(1), that fact would not affect immunity for conditions and structures on Midcontinent's land.[7] Moreover, the recreational use immunity statute immunizes "tenant[s], lessee[s] occupant[s], or person[s] in control of the premises," <u>id.</u> § 53-08-01, and there is no evidence that someone other than Midcontinent controlled both the prairie road and the area where Cudworth was injured.

**D. Nuisance**

The Cudworths' final claim is for nuisance, which they argue is a separate claim that may proceed independent of their tort action and irrespective of statutory immunity. We disagree. Nuisance is defined by statute in North Dakota and requires predicate proof of either an unlawful act or failure to perform a duty. <u>See</u> N.D. Cent. Code. § 42-01-01; <u>Rassier v. Houim</u>, 488 N.W.2d 635, 637 (N.D. 1992) ("The duty which gives rise to a nuisance claim is the absolute duty not to act in a way which unreasonably interferes with other persons' use and enjoyment of their property."). There is no evidence that the portion of the barrier which injured Cudworth was unlawfully on Midcontinent's land, and the recreational use immunity statute operates to absolve landowners of any affirmative duty to entering recreational users.

The judgment is affirmed.

_____

[7]The same logic applies even if the barrier extended beyond Midcontinent's property, given that the Cudworths are suing for an injury that occurred on Midcontinent's land, caused by a portion of the barrier also on Midcontinent's land.