Filed 6/25/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>v.<br><br>FRITZ PAIGE,<br>    Defendant and Appellant. | A157494<br><br>(Alameda County Super.<br> Ct. No. 162904) |

Penal Code section 1170.95, which became effective in January 2019, was adopted by the Legislature as part of the changes in the application of the felony murder and natural and probable consequences theories of murder liability contained in Senate Bill No. 1437.  It entitles certain defendants to petition the superior court for resentencing.  Defendant Fritz Paige filed such a petition, which the trial court denied.  The court based its denial on the fact that Paige, although he was charged with felony murder, was convicted  of voluntary manslaughter via a plea agreement.  Paige argues, based on principles of statutory interpretation and his equal protection rights under the federal and California constitutions, that the court erred.  We follow the other appellate courts regarding these issues and affirm.

1

# BACKGROUND

In 2010, the Alameda County District Attorney charged Paige with murder. The prosecution contended that Paige, although not the actual killer, aided and abetted an armed robbery in Oakland, California during which a man was shot and killed.[1]

The record, which largely consists of Paige's own statements to police, indicates that in December 2005, Paige suggested to a person he referred to as his "partner," a long-time friend who needed money, that some day they should rob the attendees of a local dice game in which Paige regularly played and thousands of dollars were being wagered. The partner called Paige on the morning of the incident and complained about his need for money. Paige told him to find two "youngsters" to act as accomplices, obtain a couple of handguns, and conduct an armed robbery of the game's attendees, who would include Paige, that evening at an Oakland park. Paige told him the attendees would be unarmed and have about $10,000 with them, and that his partner should not shoot anyone.

At about 6:15 p.m. that evening, Paige's partner and two accomplices arrived at the dice game armed with two handguns and a rifle and announced their hold-up. Paige was attending the game. Another man turned a flashlight on Paige's partner, who shot the man, resulting in his death. Paige ran from the scene. Subsequently, he met with his partner and received a share of the stolen money.

After being held to answer on the murder charge, Paige entered into a negotiated disposition of his case in 2010, which led to his conviction for

---

[1] Although the information charging Paige is not in the record, the parties do not dispute these matters.

voluntary manslaughter and other charges and a 20-year prison sentence. This sentence consisted of an 11-year term for manslaughter, a one-year term for an arming enhancement allegation, and two consecutive four-year terms for other charges unrelated to the incident.[2]  The court ordered that he receive certain custody and conduct credits, and imposed various fine and fees.

In January 2019, Paige filed what he titled a petition for writ of habeas corpus based on Penal Code section 1170.95,[3] which became effective on January 1, 2019.  (Stats. 2018, ch. 1015, § 4.)  Paige requested that his manslaughter conviction be vacated and that he be resentenced under section 1170.95.  He contended that the information filed against him enabled the prosecution to try him under a theory of felony murder, that he accepted a plea offer in lieu of a trial, and that he could not now be convicted of murder under the recent changes to the Penal Code contained in Senate Bill No. 1437, of which section 1170.95 was a part.

The court appointed Paige counsel and directed the district attorney's office to file a response.  The district attorney's office subsequently argued that:  (1) based on documents it submitted, including Paige's statements to police, Paige could still be convicted of murder under the new laws as a major participant who acted with reckless disregard for human life, and (2) Paige was ineligible for relief because section 1170.95 applies only to defendants convicted of murder, and Paige was convicted of voluntary manslaughter.

Paige filed further briefs.  Among other things, he argued that section 1170.95 applied to defendants who, like him, were charged with

---

[2]  Paige waived objection to the consecutive terms violating the one-third of the midterm limit on such sentences.

[3]  All statutory references are to the Penal Code unless stated.

3

murder but were convicted of voluntary manslaughter under a plea agreement.

The trial court heard arguments at a hearing in which it also considered two petitions by other persons that raised the same issue—whether a defendant charged with murder but convicted of voluntary manslaughter pursuant to a plea agreement could petition for resentencing under section 1170.95. After hearing argument, the court ruled that such defendants could not petition under section 1170.95 and, thus, that Paige had not made a prima facie case that he was eligible for relief. The court did not decide whether, as the prosecution also argued, Paige had been a major participant in the robbery who acted with reckless indifference to human life and thus could be convicted of first degree murder under present law, which would have also rendered him ineligible for relief under section 1170.95.

Paige filed a timely notice of appeal.

## DISCUSSION

### I.

### *The Superior Court Correctly Interpreted Section 1170.95.*

#### A. Legal Standards

Where a question of statutory interpretation based on undisputed facts is presented, we conduct an independent review of the statute in question. (*People v. Tran* (2015) 61 Cal.4th 1160, 1166.) "In doing so, ' "our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " ' " (*Ibid*.) "We begin by examining the words of the statute, affording them 'their ordinary and usual meaning and viewing them in their statutory context' [citation], for ' "if the statutory language is not ambiguous, then . . . the plain meaning of the language governs." ' " (*People v. Colbert* (2019) 6 Cal.5th 596, 603.) "We . . . must, if

4

possible without doing violence to the language and spirit of the law, interpret it so as to harmonize and give effect to all its provisions." (*People v. Garcia* (1999) 21 Cal.4th 1, 14.)

We turn to extrinsic aids to assist in our interpretation "when the statute's language is ambiguous or susceptible of more than one reasonable interpretation." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.) Extrinsic interpretative aids include the ostensible objects to be achieved and the legislative history. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1369.) " ' "Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute." ' " (*Ibid*.)

## B. Analysis

The relevant part of section 1170.95 provides:

"(a) A person *convicted of felony murder or murder under a natural and probable consequences theory* may file a petition with the court that sentenced the petitioner *to have the petitioner's murder conviction vacated* and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

"(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a), italics added.) The part of subdivision (a) that

5

we have italicized limits relief under the statute to "person[s] convicted of felony murder or murder under a natural and probable consequences theory," and the nature of the relief afforded is the right to petition "to have the petitioner's *murder conviction* vacated." (Italics added.)

The People assert, and our research confirms, that our appellate courts have repeatedly rejected the argument Paige makes here regarding his voluntary manslaughter conviction. As the Fourth Appellate District observed earlier this year in *People v. Turner* (2020) 45 Cal.App.5th 428 (*Turner*), courts, "[r]elying on the clear language of [section 1170.95], . . . have concluded that section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter. (*People v. Cervantes* (2020) 44 Cal.App.5th 884, 887 [Second District] (*Cervantes*) ['The plain language of the statute is explicit; its scope is limited to murder convictions.']; accord, *People v. Flores* (2020) 44 Cal.App.5th 985, 993 [Fourth District] [*Flores*].) For similar reasons, other courts have rejected claims that the statute extends relief to those convicted of attempted murder. ([*People v.*] *Lopez* [2019] 38 Cal.App.5th [1087,] 1104 [Second District], rev. granted[, *People v. Lopez* (Nov. 13, 2019) 2019 Cal. LEXIS 8414]; [*People v.*] *Munoz* [2019] 39 Cal.App.5th [738,] 754, rev. granted[, *People v. Munoz* (Jan. 2, 2019) 2019 Cal. LEXIS 108]; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1015-1016 [Second District]; *People v. Larios* (2019) 42 Cal.App.5th 956, 970 [Fifth District].) These decisions reason that the statutory scheme unequivocally applies only to *murder* convictions. (E.g., *Cervantes*, *supra*, 44 Cal.App.5th at p. 887; *Munoz*, at p. 754.)" (*Turner*, at pp. 435-436; accord, *People v. Sanchez* (2020) 48 Cal.App.5th 914 [Fourth District] (*Sanchez*) [section 1170.95 does not apply to defendants convicted of voluntary manslaughter and rejecting related equal protection challenge].) Paige has cited no case, nor have we

found any, that has extended section 1170.95, subdivision (a) to provide relief for a manslaughter conviction.

As did Turner, Paige focuses on language in subdivision (a)(2) of section 1170.95, which states as one of the conditions that must be met to qualify for petition relief that a petitioner must declare that he or she "was convicted of first degree or second degree murder following a trial *or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder*." (See *Turner*, *supra*, 45 Cal.App.5th at p. 436, italics added.) Paige contends this subdivision does not expressly require a defendant to have accepted a plea agreement for murder.

Read in isolation, section 1170.95, subdivision (a)(2) could be misinterpreted to be as expansive as Paige argues it is. But read in the context of the statute as a whole, considering both its structure and its language, subdivision (a)(2) cannot reasonably be understood to encompass persons who accept a plea offer in lieu of trial for a crime other than murder. The first paragraph of section 1170.95, subdivision (a) sets forth the basic "who" and "what" of the statute—who may seek relief and what they may seek. The "who" is "[a] person *convicted of felony murder or murder under a natural and probable consequences theory*" and the "what" is the opportunity to "file a petition with the court . . . *to have the petitioner's murder conviction vacated*." (Italics added.) The provision on which Paige relies, section 1170.95, subdivision (a)(2), is one of three conditions—*all* of which must *also* apply before the person convicted of felony murder or natural and probable consequences murder may seek relief under section 1170.95. Given the structure of the statute and the language in the first paragraph of section 1170.95, subdivision (a), the reference to a person who "accepted a plea offer" in subdivision (a)(2) must necessarily mean a person who accepted

7

a plea to, and was convicted of, first or second degree murder in lieu of a trial at which he could have been convicted of either of those charges.[4] Also relevant are section 1170.95, subdivision (d)(1), which refers to the court determining "whether to vacate the murder conviction," and section 1170.95, subdivision (d)(2), which allows the parties to stipulate "that the petitioner is eligible to have his or her murder conviction vacated." These provisions also expressly limit their application to murder convictions, and neither they nor any other part of the statute address granting relief from a conviction of any crime other than murder. In short, we agree with *Turner* and other cases that have concluded "the petitioning prerequisites and available relief indicate that the Legislature intended to limit relief to those convicted of *murder* under a theory of felony murder or natural-and-probable-consequences murder" and "section 1170.95 is unambiguous and does not provide relief to persons convicted of manslaughter." (*Turner*, *supra*, 45 Cal.App.5th at p. 435.)

Even having concluded the statutory language is unambiguous, we may nonetheless consult legislative history to " 'determine whether the literal meaning of a statute comports with its purpose.' " (*Turner*, 45 Cal.App.5th at p. 436, quoting *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.) That said, we reject Paige's argument based on a snippet of language from the uncodified section of Senate Bill No. 1437 stating the purpose of the bill is to more equitably sentence offenders "in accordance with their involvement in *homicides*" (Stats. 2018, ch. 1015, § 1, subd. (b), italics added), that the statute extends beyond murder. Paige again focuses on one

---

[4] Thus, for example, a defendant charged with first degree murder might accept a plea to second degree murder, or a defendant charged with first degree murder with special circumstances might accept a plea to first degree murder without such circumstances.

part of a larger document, here a set of legislative findings, without regard to its other provisions. But in the same uncodified section of the bill that sets forth its general purposes of fairly addressing culpability and reducing prison overcrowding caused by inequitable sentences, the Legislature also made the following findings. "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates *to murder*, to ensure that *murder liability* is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.*, subd. (f), italics added.) "Except as stated in subdivision (e) of Section 189 of the Penal Code, a conviction *for murder* requires that a person act with malice aforethought. A person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (*Id.*, subd. (g), italics added.)

Beyond these legislative findings, which further undermine Paige's argument, the *Turner* court examined the full history of section 1170.95 and described it in an opinion that makes plain the Legislature's focus on reforming liability for murder and not for any other crime. After discussing at length the year-long history of the Legislature's attempt to reform the law " 'to limit convictions and subsequent sentencing in both felony murder cases and aider and abettor matters prosecuted under [the] "natural and probable consequences" doctrine,' " to mitigate "the harsh sentences for persons convicted of first- and second-degree murder" and to recognize the "less culpable mental states for liability based on felony murder and natural-and-probable-consequences murder" (*Turner*, *supra*, 45 Cal.App.5th at pp. 436-438), the court drew "a few broad points from this detailed history. First, the Legislature understood the distinction between murder and manslaughter

9

and focused its efforts on revising accomplice liability under a felony murder or natural and probable consequences theory.  Second, nearly every committee report and analyses made note of the life sentences imposed for defendants convicted of first- or second-degree murder.  One report based cost estimates on the number of inmates serving terms for first- or second-degree murder.  Finally, the petitioning procedure was *restricted* by amendment to apply to persons convicted of felony murder or murder under a natural and probable consequences theory.  Viewed together, the legislative history confirms that a defendant who faces murder liability under the natural and probable consequences doctrine, but pleads guilty to manslaughter in lieu of trial, is not eligible for resentencing under section 1170.95." (*Id*. at p. 438.)

Finally, Paige argues that allowing those who have been convicted of murder to obtain relief under section 1170.95 while denying the same relief to those who pleaded guilty to voluntary manslaughter in lieu of trial on felony murder charges "would be absurd and could not have been the Legislature's intent." (See *Turner*, *supra*, 45 Cal.App.4th at p. 438.)  We disagree.  Again, the *Turner* court rejected a similar argument:

" 'Courts may, of course, disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary legislative intent.' (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1105.)  But our interpretation does neither.  The uncodified legislative declarations and findings in Senate Bill [No.] 1437 make repeated references to 'murder,' underscoring the need to amend the natural and probable consequences doctrine 'as it relates to murder,' but include no references to manslaughter.  The petitioning prerequisites and available relief all presuppose a murder conviction.  And the legislative history underscores that the Legislature did not intend to

10

extend relief to persons like Turner, who were convicted of manslaughter by plea.

"Nor does our construction produce absurdity by undermining the Legislature's goal to calibrate punishment to culpability.  The punishment for manslaughter is already less than that imposed for first- or second-degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter and 2, 3 or 4 years for involuntary manslaughter permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors.  (Pen. Code, § 193, subds. (a)-(b); see *Munoz*, *supra*, 39 Cal.App.5th at pp. 757-758, rev. granted.)  Providing relief solely to defendants convicted of murder under a felony-murder or natural and probable consequences theory does not conflict with the Legislature's stated objective to make 'statutory changes to more equitably sentence offenders in accordance with their involvement in homicides.'  (Stats. 2018, ch. 1015, § 1, subd. (b).)"  (*Turner*, *supra*, 45 Cal.App.5th at pp. 438-439; see also *Flores*, *supra*, 44 Cal.App.5th at p. 993 [although manslaughter is a lesser included offense of murder, it is " 'clearly a separate offense,' " and section 1170.95 "limits relief only to qualifying persons who were convicted or murder"].)

In short, we agree with our colleagues in the Second, Fourth and Fifth Districts holding that defendants charged with felony murder but convicted of voluntary manslaughter pursuant to a plea agreement are not eligible for relief under section 1170.95.  Paige's argument to the contrary is without merit.

11

## II.

### *Paige's Equal Protection Argument Is Without Merit.*

Paige also argues that an interpretation of section 1170.95 that affords relief to defendants convicted of felony murder but not voluntary manslaughter, when both groups of defendants "are subject to prosecution under the felony murder rule merely because they were minor participants in a robbery, who acted without reckless indifference to human life, and a codefendant shot and killed someone," violates the equal protection provisions of the federal and California constitutions because it treats differently persons similarly situated without a rational basis for doing so. In *Cervantes*, in an opinion authored by Justice Arthur Gilbert, the Second District rejected a similar argument. We agree with the analysis in *Cervantes* and adopt it here:

"The first step in an equal protection analysis is to determine whether the defendant is similarly situated with those who are entitled to the statutory benefit. [Citation.] Cervantes was convicted of voluntary manslaughter, a different crime from murder, which carries a different punishment. Normally 'offenders who commit different crimes are not similarly situated' for equal protection purposes. [Citation.] '[O]nly those persons who are similarly situated are protected from invidiously disparate treatment.' [Citation.] [¶] . . .[¶]

"When the Legislature reforms one area of the law, it is not required to reform other areas of the law. (*Kasler v. Lockyer* (2000) 23 Cal.App.4th 472, 488.) It may elect to make reforms ' " 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' " ' (*Ibid*.) Here the legislative focus was centered on the unfairness of the felony murder rule. The Legislature could rationally decide to change the law in

this area and not be currently concerned with crimes not involved with that rule.  (*Ibid*.)  It also could reasonably decide that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the felony murder rule could be excessive and reform was needed only there.  (*Williams v. Illinois* (1970) 399 U.S. 235, 241 ['A State has wide latitude in fixing the punishment for state crimes'].)  Legislators in making this choice could also consider a variety of other factors including the number of prisoners subject to the change and its impact on the 'administration of justice.' [Citation.]

"The decision not to include manslaughter in section 1170.95 falls within the Legislature's 'line-drawing' authority as a rational choice that is not constitutionally prohibited.  (*People v. Chatman* (2018) 4 Cal.5th 277, 283.)  '[T]he Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses.'  (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887.)  A classification is not arbitrary or irrational simply because it is 'underinclusive.'  (*Ibid*.)  'A criminal defendant has no vested interest " 'in a specific term of imprisonment or in the designation [of] a particular crime [he or she] receives.' " '  (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)  'Courts routinely decline to intrude upon the "broad discretion" such policy judgments entail.'  (*Ibid*.)"  (*Cervantes, supra*, 44 Cal.App.5th at pp. 888-889.)

In *Sanchez,* the court likewise addressed an equal protection challenge to section 1170.95 as it has been interpreted, and agreed with the analysis in *Cervantes*.  (See *Sanchez*, *supra*, 48 Cal.App.5th at pp. 920-921.)  The *Sanchez* court also rejected an argument similar to one made by Paige here.  "We reject Sanchez's assertion that the distinction [between persons convicted of murder under a felony murder or natural and probable

consequences doctrine and persons who were charged with murder under one of those theories and pled to voluntary manslaughter] was not reasonable in light of the Legislature's intent to save money on the costs of incarceration. Whether expanding section 1170.95 to include those who pled guilty to voluntary manslaughter would result in more savings is irrelevant. That is exactly the type of fiscal line-drawing and policymaking decision that the Legislature is free to make. ([*People v.*] *Rajanayagam* [2012] 211 Cal.App.4th [42,] 55-56.) It does not demonstrate that it was irrational to distinguish between those convicted of murder by plea and those convicted of voluntary manslaughter by plea." (*Id.* at p. 921.)

We agree with the *Cervantes* and *Sanchez* courts' analyses and adopt them here. Paige's equal protection argument also is without merit.

### DISPOSITION

The ruling appealed from is affirmed.

14

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

RICHMAN, J.

*People v. Paige* (A157494)

Trial Court:        Alameda County Superior Court

Trial Judge:        Hon. Morris D. Jacobson

Counsel:

Robert H. Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share and Alisha M. Carlile, Deputy Attorneys General, for Plaintiff and Respondent.